729 S.E.2d 800

**Joe E. MILLER, Commissioner, Division of Motor Vehicles, Petitioner**

v.

**David K. SMITH, Respondent.**

No. 11–0147.

Supreme Court of Appeals of
West Virginia.

Submitted April 11, 2012.

Decided June 7, 2012.

Dissenting Opinion of Justice Benjamin
July 20, 2012.

**479**

Darrell McGraw, Attorney General, Scott E. Johnson, Elaine L. Skorich, Attorney General's Office, Charleston, WV, Counsel for the Petitioner.

Matthew L. Clark, Kayser, Layne & Clark, Point Pleasant, WV, Counsel for the Respondent.

McHUGH, Justice:

This is an appeal by Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "DMV"), from an order of the Circuit Court of Mason County reversing the administrative license revocation of Mr. David K. Smith. Upon thorough review of the record, arguments of the parties, statutory framework, and relevant precedent, this Court reverses the lower court's

order and remands this matter for the entry of an order reinstating the administrative license revocation.

## I. Factual and Procedural History

On July 9, 2009, Mr. Smith was stopped and arrested for DUI at a safety checkpoint established by West Virginia State Police on West Virginia Route 2 near Point Pleasant, West Virginia. Based upon Senior Trooper A.D. Wootton's observation that the Ohio license plate being displayed on Mr. Smith's car had not been issued to that vehicle, Trooper Wootton asked Mr. Smith to move his car from the traffic lane to the side of the roadway. Instead, Mr. Smith began driving slowly south on Route 2, and Trooper Wootton therefore entered his police cruiser and followed Mr. Smith for approximately one hundred yards before Mr. Smith finally drove off the roadway and stopped his vehicle. When Trooper Wootton directed Mr. Smith to roll down his driver's side window, Mr. Smith did not immediately comply. When the driver's side door was eventually opened, Trooper Wootton detected an odor of alcohol on Mr. Smith's breath, and Mr. Smith admitted to having consumed two margaritas. Trooper Wootton further observed that Mr. Smith had difficulty following directions, was unsteady, and had glassy eyes and slurred speech. Field sobriety testing indicated balance and gait difficulties, and the results of the preliminary breath testing indicated that Mr. Smith's blood alcohol concentration level was .293. Trooper Wootton arrested Mr. Smith for driving a motor vehicle while under the influence of alcohol.

Mr. Smith's license was administratively revoked on September 22, 2009. Mr. Smith challenged that administrative revocation, and subsequent to a March 3, 2010, administrative hearing, the DMV Commissioner ordered administrative license revocation effective August 4, 2010. In an undated order,[1] the DMV Commissioner found that the failure of the initial traffic stop to comply with the requirements set forth in *State v. Sigler*, 224 W.Va. 608, 687 S.E.2d 391 (2009), affected only the criminal [2] portion of the proceedings and did not impact the authority of the DMV to administratively revoke Mr. Smith's license in this separate civil proceeding. The DMV Commissioner further found that the application of the exclusionary rule, as a bar to the utilization of evidence in the criminal context, would be inappropriate in civil license revocation proceedings.

In his appeal to the lower court, Mr. Smith argued that the DMV Commissioner lacked jurisdiction to issue the revocation order, based upon the passage of West Virginia Code § 17C-5C-3, effective June 11, 2010, granting jurisdiction for DMV appeals to the Office of Administrative Hearings. In response, the DMV Commissioner contended that jurisdiction was properly retained by the DMV because it was within the authority of the Secretary of Transportation to create interim rules to effectuate the transfer of jurisdictional authority from the DMV to the Office of Administrative Hearings. Specifically, on May 17, 2010, Secretary of Transportation Paul A Mattox, Jr., (hereinafter "Secretary") wrote a letter to DMV Commissioner Joe Miller in which the Secretary explained that Ms. Jill C. Dunn had been appointed as the West Virginia Department of Transportation "designee to fulfill the Cabinet Secretary's statutory obligations pursuant to § 17C-5-1 et seq."

On June 10, 2010, Ms. Dunn issued a memorandum (hereinafter "Dunn letter") providing for the gradual transition of authority to conduct administrative hearings. The Dunn letter stated that the Office of Administrative Hearings would have jurisdiction over appeals on incidents occurring on or after June 11, 2010. Thus, according to the time frame established therein, the incident involving Mr. Smith would be encompassed within the jurisdiction of the DMV.

1. The DMV Commissioner has not contested Mr. Smith's contention that the order was rendered subsequent to June 11, 2010.

2. The criminal action against Mr. Smith was dismissed on February 3, 2010, based upon the state's acknowledgment that the safety checkpoint had not comported with the procedural requirements enumerated by this Court in *Sigler*. The *Sigler* opinion was actually issued four months after the safety checkpoint was utilized in this case. At the time of Mr. Smith's safety checkpoint, the officers had no reason to believe that their stop was improper.

The lower court, by order dated January 5, 2011, found that West Virginia Code § 17–5C–3 [3] terminated DMV jurisdiction and conferred it upon the Office of Administrative Hearings immediately, as of the June 11, 2010, effective date of the statute. The lower court further found that the appointment of Ms. Dunn was not properly accomplished and had no legal effect since the Secretary's letter did not specifically mention § 17C–5C. The lower court also observed that while the version of West Virginia Code § 17C–5A–2 in effect at the time of this incident did not include a requirement for a lawful arrest in a civil license revocation proceeding based upon driving under the influence, the 2010 amendment did include such a requirement. The lower court categorized that statutory amendment as procedural in nature and therefore found that it was retroactive to require a lawful stop incident to Mr. Smith's DUI arrest on July 9, 2009.

The DMV appeals to this Court, contending that it properly retained jurisdiction over this case and that the lower court erred in applying the exclusionary rule. The DMV requests reversal of the lower court's order and reinstatement of the order administratively revoking Mr. Smith's license to operate a motor vehicle.

## II. Standard of Review

In syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), this Court explained our review of a circuit court's order in a case of this nature:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) [4] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

196 W.Va. at 590, 474 S.E.2d at 520 (footnote supplied). In syllabus point two of *Muscatell,* this Court further explained the standard where the circuit court decision differs from the administrative agency decision, as in the present case. "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*"

**3.** West Virginia Code § 17C–5C–3 provides as follows:

> The Office of Administrative Hearings jurisdiction to hear and determine all:
> (1) Appeals from an order of the Commissioner of the Division of Motor Vehicles suspending a license pursuant to section eight, [§ 17B–2B–8] article two-B, chapter seventeen-B of this code;
> (2) Appeals from decisions or orders of the Commissioner of the Division of Motor Vehicles suspending or revoking a license pursuant to sections three-c [§ 17B–3–3c], six [§ 17B–3–6] and twelve [§ 17B–3–12], article three, chapter seventeen-B of this code;
> (3) Appeals from orders of the Commissioner of the Division of Motor Vehicles pursuant to section two [§ 17C–5A–2], article five-A, of this chapter, revoking or suspending a license under the provisions of section one [§ 17C–5C–1] of this article or section seven [§ 17C–5–7], article five of chapter;
> (4) Appeals from decisions or orders of the Commissioner of the Division of Motor Vehicles denying, suspending, revoking, refusing to renew any license or imposing any civil money penalty for violating the provisions of any licensing law contained in chapters seventeen-B [§§ 17B–1–1 et seq.] and seventeen-c [§§ 17C–

> 1–1 et seq.] that are administered by the Commissioner of the Division of Motor Vehicles; and
> (5) Other matters which may be conferred on the office by statute or legislatively approved rules.

**4.** West Virginia Code § 29A–5–4(g) (1998) (Repl. Vol.2007) provides as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedures; or
> (4) Affected by other error of law; or
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

### III. Discussion

#### A. Jurisdiction

The DMV contends that West Virginia Code § 17C–5C–3 did not *immediately* divest it of jurisdiction upon the effective date of that statute, June 11, 2010. Rather, the DMV argues that West Virginia Code § 17C–5C–5 (2010)[5] provided significant latitude in facilitating a *gradual transition* period and statutorily specifying that the conveyance of responsibility to the Office of Administrative Hearings would be concluded by October 1, 2010.

As referenced above, the Dunn letter specified that the DMV would retain jurisdiction over incidents occurring prior to the effective date of the statute, June 11, 2010. The incident in the present case falls squarely within that category, having occurred on July 9, 2009. Moreover, the hearing in the present case was conducted in March 2010, also prior to the June 11, 2010, effective date of the statute. Thus, because *both the incident and the hearing* in this case occurred prior to June 11, 2010, the DMV contends that it properly retained jurisdiction over this case.

On the contrary, Mr. Smith maintains that the circuit court was correct in finding that West Virginia Code § 17C–5C–3 granted jurisdiction to Office of Administrative Hearings *immediately* as of June 11, 2010. Further, Mr. Smith contends that West Virginia Code § 17C–5C–5 does not provide for temporary retention of jurisdiction to DMV. He argues that any attempt to retain DMV jurisdiction through the Dunn appointment and the subsequent June 10, 2010, Dunn letter regarding gradual transition is ineffective since the Secretary's appointment of Ms. Dunn made specific reference only to § 17C–5–1, et seq., rather than § 17C–5C.[6]

■ The West Virginia Legislature clearly established a period of transition of jurisdictional authority from the DMV to the Office of Administrative Hearings through its enactment of West Virginia Code § 17C–5C–5.[7] The Secretary of Transportation thereafter

---

**5.** West Virginia Code § 17C–5C–5 provides as follows:

(a) In order to implement an *orderly and efficient transition* of the administrative hearing process from the Division of Motor Vehicles *to the Office of Administrative Hearings, the Secretary of the Department of Transportation may establish interim policies and procedures for the transfer of administrative hearings for appeals from decisions or orders of the Commissioner of the Division of Motor Vehicles* denying, suspending, revoking, refusing to renew any license or imposing any civil money penalty for violating the provisions of any licensing law contained in chapters, seventeen-A [§§ 17A–1–1 et seq.], seventeen-B [§§ 17B–1–1 et seq.], seventeen-C [§§ 17C–1–1 et seq.], seventeen-D [§§ 17D–1–1 et seq.] and seventeen-E [§§ 17E–1–1 et seq.] of this code, currently administered by the Commissioner of the Division of Motor Vehicles, *no later than October 1,* 2010.

(b) On the effective date of this article, all equipment and records necessary to effectuate *the purposes of this article shall be transferred* from the Division of Motor Vehicle to the Office of Administrative Hearings: Provided, That in order to provide for a smooth transition, the Secretary of Transportation may establish interim policies and procedures, determine the how equipment and records are to be transferred and provide that the transfers provided for in this subsection take effect no later than October 1, 2010.

W. Va.Code § 17C–5C–5 (emphasis supplied).

**6.** Mr. Smith maintains that while West Virginia Code § 17C–5C concerns the *specific* establishment and implementation of the Office of Administrative Hearings, the Secretary's reference to West Virginia Code § 17C–5–1, et seq., would include more *general* and unrelated matters such as the power to issue orders of revocation upon receipt of requisite information from a police officer.

**7.** Although this Court has not previously addressed the contention that the DMV *immediately surrendered* jurisdiction on the June 11, 2010, effective date of the statute, the Circuit Court of Raleigh County did address that issue in *Shrader v. Miller*, Civil Action No. 10–AA–26–B, October 20, 2010. In that case, the circuit court found that it was entirely within the authority of the Secretary of Transportation to establish interim rules for the transition of power from the DMV to the Office of Administrative Hearings. The court found that such transition was specifically contemplated by the West Virginia Legislature, as explained in West Virginia Code § 17C–5C–5.

The Circuit Court of Raleigh County further found that pursuant to these interim rules established by the Dunn letter, incidents occurring prior to June 11, 2010, as in the present case, would remain within the jurisdiction of the DMV, and those occurring after June 11, 2010, would be within the jurisdiction of the Office of Administrative Hearings. In its examination of the matter, the circuit court concluded as follows:

The statute clearly gives to the Secretary of Transportation the authority to 'establish inter-

properly appointed Ms. Dunn to oversee that orderly transition, and a determination was made that DMV would retain jurisdiction of incidents occurring prior to June 11, 2010. As this Court observed in *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995), "[a]n inquiring court-even a court empowered to conduct *de novo* review-must examine a regulatory interpretation of a statute by standards that include appropriate deference to agency expertise and discretion." 195 W.Va. at 582, 466 S.E.2d at 433.

■ The lower court discredits the Secretary's May 17, 2010, appointment of Ms. Dunn by emphasizing the absence of a specific reference to West Virginia Code § 17C–5C. This Court, however, finds that omission to be of little consequence. The Secretary's clear intent was to comply with the legislative mandate for orderly transition of authority and to establish the logistics necessary to effectuate such a tradition, based upon the plethora of statutory alterations impacting the jurisdictional transfer. While the more desirable course would have been to include a specific reference to West Virginia Code § 17C–5C, the omission of that reference does not invalidate the appointment of Ms. Dunn. This Court will not alter the clear intent of the Secretary based upon that inconsequential omission. We hold that the Secretary of Transportation's May 17, 2010, appointment of a designee to fulfill the statutory obligations regarding an orderly transition of jurisdictional authority from the Department of Motor Vehicles to the Office of Administrative Hearings was an appropriate exercise of discretionary power and in full compliance with West Virginia Code §§ 17C–5C–3 and 17C–5C–5.

### B. Retroactivity of West Virginia Code § 17C–5A–2

■ West Virginia Code § 17C–5A–2 provides the framework for civil license revoca-tion based upon driving under the influence of alcohol. The lower court evaluated the application of West Virginia Code § 17C–5A–2 to this case and noted that the statute in effect at that time of this July 9, 2009, incident was the 2008 version of that statute which did not include a requirement that the underlying arrest for DUI be a "lawful arrest." In the 2010 amendments to § 17C–5A–2, however, the legislature included a requirement for a lawful arrest. In determining which of those versions applied to this case, the lower court concluded that the 2010 statute was retroactive, thus requiring a lawful arrest in this case. In so doing, the lower court premised its finding of retroactivity upon a conclusion that the statute was purely procedural in nature. As this Court has stated in numerous contexts, "[s]tatutory changes that are purely procedural in nature will be applied retroactively." Syl. Pt. 1, *Joy v. Chessie Emp. Fed. Credit Union*, 186 W.Va. 118, 411 S.E.2d 261 (1991).

■ Upon review of the lower court's reasoning, this Court's examination of the 2010 amendment indicates that the lower court's finding on the issue of retroactivity is erroneous. The 2010 statutory alteration requiring a "lawful arrest" is substantive rather than procedural; thus, the statute is *not* retroactive. Although procedural or remedial statutes may operate retroactively even absent clear legislative intent, such retroactivity is not permitted where an amendment constitutes a substantive change, creating new rights or obligations. *See, e.g.,* Syl. Pt. 2, *Smith v. West Virginia Div. of Rehab. Servs. & Div. of Pers.*, 208 W.Va. 284, 540 S.E.2d 152 (2000) (" 'A statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of

im policies and procedures. . . .' The Secretary assigned this duty to his designee, Jill C. Dunn, who established an interim policy and procedure to handle license revocation issues that were pending as of the date the new statute came into effect. The Secretary's provisions for the transition of matters pending on the effective date of the statute are a necessary and proper exercise of the authority granted to him

by the Legislature, and it does not appear that these transitional provisions are unreasonable or contrary to the intent and purpose of the statute.
The Circuit Court of Raleigh County did not, however, consider the argument, as asserted in the present case, that the Secretary of Transportation's letter failed to specifically mention West Virginia Code § 17C–5C.

enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application.' Syllabus Point 2, *Public Citizen, Inc. v. First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996)."); Syl. Pt. 1, *Loveless v. State Workmen's Comp. Comm'r,* 155 W.Va. 264, 184 S.E.2d 127 (1971) (" 'The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect.' Pt. 4, syllabus, *Taylor v. State Compensation Commissioner,* 140 W.Va. 572 [86 S.E.2d 114 (1955) ].").

While the distinction between substantive and procedural law is often vexingly obscure, it has been generally stated that "[s]ubstantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." *State v. Arbaugh,* 215 W.Va. 132, 139, 595 S.E.2d 289, 296 (2004) (Davis, J., dissenting) (quoting *State v. Templeton,* 148 Wash.2d 193, 213, 59 P.3d 632, 642 (2002)).

The inclusion of the requirement for a "lawful arrest" in the 2010 statute constitutes a substantive alteration because it represents a change in the rights and obligations of the parties. While a procedural law prescribes a manner of enforcing an existing substantive right, a substantive law establishes or alters rules, rights, or duties. Based upon this Court's finding that the 2010 amendment was substantive in nature, we further conclude that the 2008 version of the statute, which

does not include a requirement for a lawful arrest, is applicable to this case.[8]

### C. Exclusionary Rule

The DMV also contends that the lower court erred in applying the exclusionary rule in this *civil* administrative license revocation. The DMV argues that the exclusionary rule is a judicial tool designed for application *only* in the criminal context. Because the ultimate result in this case was civil license revocation rather than criminal punishment, the DMV maintains that the lower court's utilization of the exclusionary rule was erroneous.

The lower court applied an exclusionary rule concept to invalidate the civil administrative license revocation based upon the existence of the improper traffic stop. In syllabus point three of *Miller v. Toler,* 229 W.Va. 302, 729 S.E.2d 137 (2012), this Court held that "[t]he judicially-created exclusionary rule is not applicable in a civil, administrative driver's license revocation or suspension proceeding."[9] Thus, the validity of an underlying traffic stop is relevant to a determination of criminal punishment, rather than to civil administrative license revocation.

Mr. Smith references this Court's prior holding in *Clower v. West Virginia Dep't of Motor Vehicles,* 223 W.Va. 535, 678 S.E.2d 41 (2009), for the proposition that the validity of an administrative license revocation is dependent upon the legality of the initial traffic stop. Reliance upon *Clower* is misplaced; that decision was premised upon a 2004 version of the West Virginia Code § 17C–5A–2 which included language indicating that a lawful arrest was necessary.[10] *See also Cain v. West Virginia Div. of Motor Vehicles,* 225 W.Va. 467, 471 n. 11, 694 S.E.2d 309, 313 n. 11 (2010) (noting the distinction among ver-

---

8. Because this Court finds that the statute applicable to this case did not require a "lawful arrest," we have no occasion to elaborate upon what the lawful arrest language in the 2010 statute would have required under the facts of this particular case.

9. "It is also well established that a proceeding to revoke a driver's license is a civil not a criminal action." *Shumate v. West Virginia Dep't of Motor Vehicles,* 182 W.Va. 810, 813, 392 S.E.2d 701, 704 (1990) (internal quotations omitted).

10. In *Clower,* this Court acknowledged the variation in versions and stated as follows in footnote seven: "W. Va.Code, § 17C–5A–2(e) was substantially rewritten by the Legislature in 2008, Our decision on this issue is therefore limited to the application of the 2004 version of W. Va. Code, § 17C–5A–2(e)." 223 W.Va. at 544, n. 7, 678 S.E.2d at 50, n. 7.

sions of the statute and explaining that "[t]he current version of this statute [2008 version] no longer requires an arrest. Instead, the second finding that must be established is that a person committed a DUI offense."). The Court of Appeals of New Mexico aptly explained this distinction as follows:

> The plain language of the statute says nothing about the preliminary traffic stop: Thus, even assuming that an officer did not have reasonable suspicion to stop the driver's vehicle, the statute states that revocation of a driver's license will be upheld as long as the officer had reasonable grounds to believe the driver was DWI and the other three elements are satisfied [arrest, timely hearing, and refusal of blood alcohol testing or a specified blood alcohol concentration].

*Glynn v. New Mexico*, 149 N.M. 518, 252 P.3d 742, 747 (App.2011). The New Mexico court in *Glynn*, like this Court in *Toler*, found that the exclusionary rule does not apply to civil license revocation proceedings and explained that "[i]f the exclusionary rule does not apply to the proceedings, then the authority of the [Motor Vehicle Division] to consider the legality of a stop is irrelevant because the evidence would be admitted regardless of the legality of the stop." *Id.* Likewise, this Court finds that the issue of whether the initial traffic stop was legally deficient in some regard is relevant only in the criminal context. The civil license revocation in this case is to be premised upon the factors specifically identified in West Virginia Code 17C–5A–2 (2008), including whether the investigating officer had reasonable grounds to believe that the individual was driving under the influence; whether the person committed an offense involving driving under the influence; and whether the tests, if any, were administered properly.

This Court has been attentive to the concept that the two avenues of inquiry resulting from a DUI incident must remain separate and distinct. The *civil* license revocation is to be carefully differentiated from the determination of *criminal* guilt or innocence. The exclusionary rule is only applicable in the criminal context and "excludes evidence of the illegal stop from the *criminal* DWI pro-ceeding, thereby preventing the loss of the driver's liberty interest and deterring future police misconduct." *Glynn*, 252 P.3d at 750 (emphasis supplied). Within the separate *civil* context, however, the "driver nonetheless loses his or her driver's license in order to temporarily remove the driver from the roads of the state if the police officer had reasonable grounds to believe the driver was [DUI] and if the other elements necessary for revocation are met." *Id.* No inconsistency exists in that dual approach to processing a driver under these circumstances.

## IV.  Conclusion

Based upon the foregoing analysis, this Court reverses the order of the lower court and remands this matter for entry of an order reinstating Mr. Smith's civil administrative license revocation.

Reversed and Remanded with Directions.

Justice BENJAMIN concurs in part and dissent in part and reserves the right to file a separate opinion.

### BENJAMIN, J., dissenting:

(Filed July 20, 2012.)

I dissent from the holding of the Court. I write separately to again question the Court's incorporation in the case *sub judice* of Syl. pt. 3, *Miller v. Toler*, 229 W.Va. 302, 729 S.E.2d 137 (2012), which held, "The judicially-created exclusionary rule is not applicable in a civil, administrative driver's license revocation or suspension proceeding." As set forth in my dissenting opinion in *Toler*, I am disturbed that the majority opinion makes this Court complicit in the improper *and* unconstitutional acts of Executive Branch officials.

I do not believe the constitutional protections against unreasonable searches and seizures, which are not by their terms limited only to criminal prosecutions, sanctions the "ends justifies the means" test adopted by the Majority. Constitutional rights do not stop at the door of *either* a criminal or non-criminal proceeding, especially where the State's gathering of evidence was for the dual purpose of criminal and non-criminal prosecutions. To presume that the Legislature would recognize procedural rights, but

not search and seizure rights, highlights the illogic of the majority opinion.

Indeed, even if one were to use a "balancing" approach, the majority opinion's reasoning is unpersuasive. This approach not only inoculates the State from the consequences of its unlawful conduct, it also diminishes the objectivity requirement of our search and seizure jurisprudence. The majority opinion seriously compromises the integrity of this Court and the process at issue.