# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Ronnie Meadows,**
**Petitioner Below, Petitioner**

**FILED**

**March 16, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0138**  (Kanawha County 13-AA-89)

**Patricia S. Reed, Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ronnie Meadows, by his counsel Carter Zerbe and David Pence, appeals the order of the Circuit Court of Kanawha County entered February 6, 2014. That order affirmed a final order dated July 23, 2013, by the Commissioner of the West Virginia Division of Motor Vehicles,[1] which revoked the petitioner's license to drive for driving under the influence ("DUI"). The Commissioner, by counsel Janet E. James, filed a response in support of the circuit court's order. The petitioner filed a reply.

This Court has considered the parties' briefs, the record on appeal, and the parties' oral arguments. Upon consideration under our standards of review, the Court finds no substantial question of law, and finds that the circuit court was plainly wrong in its decision. The record establishes that the petitioner did not receive a timely hearing on his revocation, and the Commissioner's delay in affording a hearing clearly worked to prejudice the petitioner. For these reasons, a memorandum decision reversing the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 21, 2008, petitioner Ronnie Meadows was arrested by Officer J.D. Matheny of the Charleston Police Department for driving under the influence. The arresting officer conducted a test of Mr. Meadows's breath that showed he had a blood alcohol content of .071 g/dL. At the time of Mr. Meadows's arrest, evidence of more than .05 but less than .08 g/dL of alcohol in a person's blood was relevant evidence the person was under the influence of alcohol.[2]

---

[1] When the revocation order was entered, Steven O. Dale was the Acting Commissioner of the West Virginia Division of Motor Vehicles. Pursuant to Rule 41(c) of the Rules of Appellate Procedure, the current commissioner, Patricia S. Reed, has been automatically substituted as the named petitioner herein.

[2] *W.Va. Code* § 17C-5-8(a)(2) [2004] stated:

1

Officer Matheny did not charge Mr. Meadows with any criminal offense, including driving under the influence. However, the arresting officer forwarded the printout from Mr. Meadows's breath test, as well as an implied consent statement and a "DUI Information Sheet," to the Division of Motor Vehicles.

On September 17, 2008, the Commissioner of the Division of Motor Vehicles issued an order revoking Mr. Meadows's license to operate a motor vehicle, because of Officer Matheny's allegation that Mr. Meadows drove while intoxicated.[3] Mr. Meadows timely requested an administrative hearing of the revocation order. By law, the Commissioner was required to hold the requested hearing within six months unless there was a "postponement or continuance . . . for good cause shown."[4] Mr. Meadows also requested the investigating officer's attendance at the hearing. By law, the Commissioner then bore the responsibility for securing Officer Matheny's attendance at any hearing. *W.Va. Code* § 17C-5A-2(d) [2008].

Officer Matheny notified the Commissioner by letter that he would be on active military duty from October 8, 2008, through March 8, 2009, and from April 1st to the 19th of 2009.[5] In a follow up letter, Officer Matheny said he would be available for hearings after April 20, 2009.

---

> Evidence that there was, at that time, more than five hundredths of one percent and less than eight hundredths of one percent, by weight, of alcohol in the person's blood is relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of alcohol[.]

The statute was revised in 2013, and this identical subsection may now be found at *W.Va. Code* § 17C-5-8(b)(2).

[3] The Commissioner's letter told Mr. Meadows the revocation was based on "a written statement . . . by the arresting officer certifying that on Aug 21, 2008 the officer had reasonable grounds to believe that you were driving a motor vehicle in this state while under the combined influence of alcohol and a controlled substance or drug."

[4] *W.Va. Code* § 17C-5A-2(c) [2008] said:

> Any hearing shall be held within one hundred eighty days after the date upon which the commissioner received the timely written request for a hearing unless there is a postponement or continuance. The commissioner may postpone or continue any hearing on the commissioner's own motion or upon application for each person for good cause shown. . . .

This statute was revised in 2010, 2012, and 2013. *W.Va. Code* § 17C-5-2(c)(1) [2013] continues to require a hearing to be held within 180 days after receipt of a timely objection to a revocation order.

[5] Officer Matheny also indicated that he might be out of the country beginning May 19, 2009, for twelve to seventeen months. The military orders in the record, however, show Officer Matheny's dates for active duty were December 1, 2008, until February 10, 2009.

2

In response, in a letter dated September 22, 2008, the Commissioner informed Mr. Meadows that the arresting officer was on military leave and that a hearing would be scheduled upon Officer Matheny's return.

While Officer Matheny's letters said he would be available after April 20, 2009, the record suggests the Commissioner did not attempt to contact the officer until December 2010 (that is, some 20 months after the officer became available and 27 months after Mr. Meadows requested a hearing). On January 27, 2011, the Charleston Police Department sent a letter to the hearing coordinator for the Commissioner stating that, as of October 15, 2010, Officer Matheny was "no longer employed with the Charleston Police Department."

The Commissioner scheduled the first administrative hearing in this case for May 4, 2011, over 31 months after Mr. Meadows asked for a hearing. On May 4th, the hearing was continued. No reason for the continuance appears in the record[6] and counsel for Mr. Meadows objected.

The Commissioner scheduled the second hearing in this case for November 14, 2011, 38 months after Mr. Meadows asked for a hearing. Four days before the hearing, counsel for the Commissioner (an assistant attorney general) asked for a continuance because he had not had "sufficient time to review the file and speak with any witnesses regarding this matter." The Commissioner continued the second hearing.

The Commissioner scheduled a third hearing to be held on February 27, 2012, some 41 months after Mr. Meadows requested a hearing. On the morning of February 27th, the Commissioner continued the administrative hearing due to the illness of a hearing examiner.[7] Mr. Meadows objected to the continuance, pointing out that the Commissioner had failed to provide a hearing within six months as required by law.

Two months later, on April 26, 2012, Officer Matheny died.

The Commissioner scheduled a fourth hearing for July 9, 2012, almost four years after Mr. Meadows was arrested by Officer Matheny. At the hearing, the Commissioner presented no witnesses and relied solely upon the DUI Information Sheet and the other two documents submitted by Officer Matheny in August 2008.

Mr. Meadows, by counsel, made a motion that the hearing examiner dismiss the case. Mr. Meadows argued that state law required a hearing within six months of his request for a hearing, yet the Commissioner had (without good cause and twice over the objections of Mr. Meadows) postponed three hearings and taken four years to hear his case. In that time, Officer Matheny, the only witness against Mr. Meadows, had died and could not be cross-examined

---

[6] A fax from the Office of Administrative Hearings dated May 4, 2011, and sent at 10:50 a.m., states: "The hearing scheduled for Ronnie W. Meadows, on May 4, 2011 at 12:30 p.m. has been continued per OAH."

[7] A fax from the legal section of the Division of Motor Vehicles, dated February 27, 2012 and sent to Mr. Meadows's counsel at 10:52 a.m., says that the hearing scheduled for "Feb. 27, 2012 at 1:00 p.m. has been continued, per the Hearing Examiner is ill."

about the contents of his reports. Counsel asserted that Mr. Meadows was prejudiced because he was "unable to cross examine the DUI Information Sheet" and that in his "numerous years of practice, I've never gotten an answer from a sheet of paper no matter how many times I've questioned it." Counsel also argued that, if the hearing examiner failed to dismiss the case, then Mr. Meadows was presumptively prejudiced because he was going to be forced to testify to rebut the unchallengeable paperwork submitted by Officer Matheny.

The hearing examiner acknowledged that this was an "unfortunate situation." However, the hearing examiner concluded that she had absolutely no authority to dismiss the case against Mr. Meadows. The hearing examiner's only authority was to "rule on evidentiary issues and submit proposed findings of fact and conclusions of law for the consideration of the" Commissioner. *W.Va. Code* § 17C-5A-2(a) [2008].

Mr. Meadows testified at the July 2012 hearing.

Ten months later, the hearing examiner drafted a final order for the Commissioner with findings of fact based largely upon the DUI Information Sheet prepared by Officer Matheny.[8] Effective July 23, 2013, the Commissioner adopted the final order and concluded that Mr. Meadows had been stopped while driving a motor vehicle "under the combined influence of alcohol, and a controlled substance or drug." Among other requirements, the Commissioner revoked Mr. Meadows's driver's license for one year.

Mr. Meadows timely petitioned the circuit court for review of the Commissioner's order. Mr. Meadows submitted a brief to the circuit court asserting he had suffered prejudice from the Commissioner's delay in affording him a prompt hearing. The Commissioner responded that prejudice could not be presumed but rather had to be proven in a hearing. In a reply brief, Mr. Meadows asked the circuit court to "allow the parties to conduct an evidentiary hearing regarding this issue."

The circuit court did not hold a hearing. In an order dated February 6, 2014, the circuit court entered a final order affirming the Commissioner's July 2013, revocation order. Mr. Meadows now appeals.

The applicable standard of review when reviewing a circuit court's order in an administrative appeal is this:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syllabus Point 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). This Court has outlined the statutory standards contained in *W.Va. Code* § 29A-5-4 in this way:

---

[8] Mr. Meadows appeals the manner in which the Commissioner's final order was prepared by the hearing examiner, and challenges the "boilerplate" nature of the Commissioner's final order. We decline to consider this issue.

4

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syllabus Point 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 628, 309 S.E.2d 342, 343 (1983).

Mr. Meadows argues that he was prejudiced by the Commissioner's delay in hearing his objection to the Commissioner's September 17, 2008 revocation order. At the time of Mr. Meadows's objection, *W.Va. Code* 17C-5A-2(c) required the Commissioner to conduct a hearing within 180 days (unless there was a postponement or continuance for "good cause shown"). The Commissioner failed to conduct a hearing for nearly four years, and in that time the State's sole witness – Officer Matheny – died.

Mr. Meadows asserts that a respondent in a license revocation proceeding has a statutory and due process right to cross-examine the arresting officer. He further asserts that the Commissioner's extended delay deprived him of this right. Additionally, Mr. Meadows contends the Commissioner's delay was unjustified and largely without good cause. The result allowed the Commissioner to revoke his license based upon faceless, voiceless documents containing written statements of the arresting officer.

The Commissioner acknowledges that there was an extended delay in holding a hearing, but counters that Mr. Meadows was required to show the delay caused actual, substantial prejudice that impaired his ability to prepare or defend his case. The Commissioner goes so far as to claim that Mr. Meadows suffered no prejudice because the Commissioner's initial revocation order was stayed and Mr. Meadows retained the ability to drive during the delay. The Commissioner also claims that, if there was any prejudice arising from the delay, then the Commissioner was equally prejudiced because the assistant attorney general was likewise deprived of the opportunity to question Officer Matheny.

Overall, the Commissioner claims that Mr. Meadows was required to seek a hearing at the circuit court level to demonstrate actual prejudice from the delay. Because the circuit court did not hold such a hearing, the Commissioner claims there is no evidence of prejudice in the record to support setting aside the Commissioner's decision. We disagree.

It is undisputed that the law governing license revocation proceedings requires that a hearing be held within 180 days after an objection to the revocation is lodged. *See W.Va. Code* 17C-5A-2(c). A hearing may be postponed or continued only for good cause, and "this Court

5

has long recognized the constitutional mandate that "'justice shall be administered without . . . delay." W.Va. Const. Art. III, § 17.' *Frantz v. Palmer*, 211 W.Va. 188, 192, 564 S.E.2d 398, 402 (2001)." *Miller v. Moredock*, 229 W.Va. 66, 70, 726 S.E.2d 34, 38 (2011). *See also Petry v. Stump*, 219 W.Va. 197, 200, 632 S.E.2d 353, 356 (2006) ("Due process rights must be considered under our general rules concerning unreasonable delay."). "[A]dministrative agencies performing quasi-judicial functions have an affirmative duty to dispose promptly of matters properly submitted." Syllabus Point 7, in part, *Allen v. State Human Rights Comm'n*, 174 W.Va. 139, 324 S.E.2d 99 (1984).

The record is clear that the Commissioner had good cause to postpone any hearing on Mr. Meadows's objection until the arresting officer was released from military duty. However, the record is just as clear that, once the officer was available to testify, the Commissioner was required to promptly hold a hearing.

Officer Matheny's letters stated he would be released from military duty and would be available to testify after April 20, 2009. Yet the Commissioner made no attempt to schedule a hearing until December 2010 or January 2011, over 27 months after Mr. Meadows sought a hearing and over 20 months after Officer Matheny said he would be available.

Furthermore, the first hearing scheduled on Mr. Meadows's objection was scheduled for May 2011, but was continued by the Commissioner for no reason. This Court has specifically rejected the Commissioner's assertion "that the Commissioner did not have to have a reason to continue a hearing on his own motion[.]" *Holland v. Miller*, 230 W.Va. 35, 38, 736 S.E.2d 35, 38 (2012). *W.Va. Code* § 17C-5A-2(c) permits continuances only "for good cause shown." The legislative rules promulgated to implement this provision likewise expressly provide that continuances must have a good cause basis, including those initiated by the Commissioner's own motion. *See* 91 *W.Va.C.S.R.* 1.3.8.3 ("The Commissioner may postpone or continue a hearing on his or her own motion. The motion shall be for good cause[.]").

The Commissioner scheduled a second hearing for November 2011. This hearing was continued on motion of an assistant attorney general because, in the prior three years, it appears that no one representing the Commissioner had found "sufficient time to review the file and speak with any witnesses regarding this matter." Despite receiving a continuance on this ground, the assistant attorney general later offered no witnesses and introduced the same three documents into evidence that the Commissioner had relied upon in September 2008.

The third hearing, for February 2012, was postponed the day of the hearing due to the illness of the hearing examiner. The fourth and final hearing was scheduled for July 2012, 47 months after Mr. Meadows was stopped by Officer Matheny and 10 weeks after the officer died.

Even though the Commissioner plainly violated the statutory requirement that a hearing be held within six months, the Commissioner claims Mr. Meadows is not entitled to relief because he did not establish he was actually prejudiced. What the Commissioner ignores is that Mr. Meadows was required to expend resources and time preparing for four hearing dates, three of which were cancelled, two on the day of the hearing. As Chief Justice Albright once noted,

6

principles of fairness suggest that the same promptness concerns that are imposed upon a defendant who requests a hearing in connection with an administrative revocation of his operator's license should be similarly imposed upon the West Virginia Department of Motor Vehicles ("DMV"). To permit the DMV to grant itself an extension of the 180-day deadline for revocation hearings that is mandated by West Virginia Code § 17C-5A-2(b) (2004) without providing for any limits on the length of such extensions encourages the establishment of a lopsided system – a system that proves inherently unjust for the defendant whose revocation proceedings are protracted, not because of his requests, but because of lengthy administrative delays.

*In re Petition of Donley*, 217 W.Va. 449, 453, 618 S.E.2d 458, 462 (2005) (Chief Justice Albright, concurring). Put another way, "what is sauce for the goose is sauce for the gander:" it is patently unfair for the Commissioner to insist upon strict adherence to statutory time limits by a driver challenging the Commissioner, while the Commissioner blithely ignores those same limits. The Legislature imposed a requirement that a hearing be held within 180 days, unless postponed or continued for good cause, and the proceedings should have been dismissed once it was clear the statutory time limit had been violated.

Still, to be clear, Mr. Meadows presented substantial evidence to the hearing examiner that he was prejudiced by the Commissioner's delays. The evidence of record shows that Mr. Meadows's ability to defend against the arresting officer's allegations was impaired by the Commissioner's delay. Because of Officer Matheny's death during the Commissioner's inaction and delay, Mr. Meadows was unable to challenge the officer's statements made in the DUI Information Sheet, the document that the Commissioner heavily relied upon to revoke his driver's license.

For instance, the DUI Information Sheet states that Officer Matheny stopped Mr. Meadows because he was "accelerating/decelerating rapidly" and for "other." Mr. Meadows testified that Officer Matheny said he stopped Mr. Meadows for running a red light at an intersection, and became angry when Mr. Meadows established, first, that there was a stop sign, not a traffic light, at the intersection, and second, that he had stopped at the intersection. Because of the delay, Mr. Meadows was not able to question the arresting officer about this inconsistency.

Further, the DUI Information Sheet states that Mr. Meadows failed the walk and turn test because he "steps off line" and made an "improper turn." Mr. Meadows testified that the test was performed in the middle of a dark, narrow street, and that there was no "line" for him to have stepped off. Further, he testified he successfully completed the test and made the turn exactly as the officer directed. The DUI Information Sheet also says Mr. Meadows failed the one legged stand. However, Mr. Meadows says he once had a brain aneurism (which was successfully treated) that still affects his sense of balance, and even demonstrated to the hearing examiner that he cannot balance on one leg. Again, the Commissioner's delay precluded Mr. Meadows from questioning the arresting officer about these conflicts in the evidence.

7

The DUI Information Sheet says that Mr. Meadows was caught driving under the influence of both "alcohol" and "controlled substances/drugs."[9] The sheet also indicates Mr. Meadows had taken "medication." Furthermore, the Commissioner revoked Mr. Meadows's license on a finding that he drove while impaired by a combination of alcohol and a controlled substance. However, Mr. Meadows testified that the only "drug" he was taking at the time he was driving was a blood pressure medication, and asserts there is no evidence in the record that the medication would impair his driving ability. Because of the Commissioner's delay that resulted in the absence of the arresting officer, the officer's notation that Mr. Meadows was impaired by "controlled substances/drugs" became an unchallengeable fact.

Finally, the record suggests that Officer Matheny's employment was terminated by the Charleston Police Department on October 15, 2010. The Commissioner's delay of a hearing until July 2012 (after Officer Matheny's April 2012 death) denied Mr. Meadows the ability to question the arresting officer regarding the reason his employment was terminated. Cross-examination of Officer Matheny may have revealed some bias or flawed training that, if sufficient to result in his termination, may also have resulted in his inability to properly conduct a DUI stop.

In conclusion, we find that Mr. Meadows established actual and substantial prejudice from the Commissioner's delay in conducting a hearing on the license revocation. We therefore reverse the circuit court's February 6, 2014, order upholding the Commissioner's revocation order, and remand the case for entry of an order reinstating Mr. Meadows's license.

Reversed and remanded.

**ISSUED:** March 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum

**DISSENTING AND WRITING SEPARATELY:**

Justice Allen H. Loughry, II

---

[9] The DUI Information Sheet has a section for the arresting officer to check one of three boxes, and says:

THE BELOW NAMED DRIVER AND/OR VEHICLE OWNER VIOLATED 17C-5-2, 17C-5A-2 OR 17E-1-1 ET SEQ. BY DRIVING UNDER THE INFLUENCE OF: ☐ ALCOHOL ☐ CONTROLLED SUBSTANCES / DRUGS ☒ COMBINED

LOUGHRY, J., dissenting:

I dissent because the majority has erroneously concluded that the hearing delay in this case lacked good cause and was prejudicial to Mr. Meadows, and because the hearing examiner correctly concluded that Mr. Meadows was DUI.

**The Hearing Delay**

West Virginia Code § 17C-5A-2(c) (2008) allowed the Commissioner to continue the administrative hearing for good cause shown, and the record reflects that Officer Matheny sent letters to the DMV advising of his unavailability. On September 12, 2008, the officer informed the DMV of the following:

> Please be advised that I will not be able to attend the attached cases due to being on active duty military training from October 8, 2008 thru March 8, 2009. As well again from April 1-19, 2009. I will be out of the country from May 19, 2009 for at least 12 months with the possibility of up to 17 months. I appreciate your cooperation on this matter and if any changes occur, I will let you know.

On September 18, 2008, Officer Matheny wrote to inform the DMV that his military orders for the active duty period of October of 2008 to April of 2009 were being processed and would be forwarded to the DMV as soon as they were available.

Unquestionably, Officer Matheny's service on active military duty and absence from the country constituted good cause for the Commissioner to continue the administrative hearing. The law in effect at that time required the Commissioner to secure the officer's attendance if requested by the driver, which Mr. Meadows did. *See* W.Va. Code § 17C-5A-2(d) (2008). In syllabus point 2 of *Miller v. Hare*, 227 W.Va. 337, 708 S.E.2d 531 (2011), we held that by virtue of the Commissioner's statutory duty under the 2008 law to comply with the driver's request and secure the officer's attendance, good cause for a continuance existed when the officer did not appear at the administrative hearing.

In the instant matter, the majority states that the Commissioner waited "some 20 months after the officer became available" before attempting to schedule the hearing. This statement is contradicted by the record evidence. Officer Matheny's September 12, 2008, letter stated that he would be out of the country for twelve to seventeen months beginning on May 19, 2009. The seventeen-month period would not have concluded until October of 2010. On December 23, 2010, which was only two and one-half months after the date on which the officer said he would be available, the Commissioner issued a notice of hearing for May 4, 2011.

9

Although the May 4, 2011, hearing was continued, the record does not reveal a reason why–other than it was "per the OAH."[1] To understand the importance of this reference to the OAH, one must recognize that West Virginia's system for driver's license revocation appeals was undergoing significant change at the time. The OAH is a separate administrative agency independent of the DMV. W.Va. Code § 17C-5C-1 to -5 (2010). Effective June 11, 2010, the Legislature took away the DMV Commissioner's authority to hold hearings and decide challenges to license revocation orders, instead placing this authority with the newly-created OAH. *Id.*; W.Va. Code § 17C-5A-2 (2010). A dispute arose during this time period as to which agency–the DMV or the OAH–had jurisdiction over cases such as this, where there was a pending challenge to a license revocation order arising from an incident occurring before the OAH was created. *See Miller v. Smith*, 229 W.Va. 478, 729 S.E.2d 800 (2012), *superceded by statute on other grounds as recognized in Dale v. Ciccone*, 233 W.Va. 652, 658-59, 760 S.E.2d 466, 472-73. This dispute apparently touched Mr. Meadow's case, as evidenced by the April 12, 2011, letter from the OAH's chief hearing examiner advising that this hearing was being moved to the OAH's office. Ultimately, in *Miller v. Smith*, this Court concluded that the DMV retained jurisdiction over the preexisting cases. *Id.,* 229 W.Va. at 482-83, 729 S.E.2d at 804-05. However, when Mr. Meadows's hearing was continued in May of 2011, neither the DMV nor the OAH would have known which agency was responsible for holding the hearing and deciding this case. Considering this background, I am disinclined to find fault with, or prejudice resulting from, the continuance of the May 4, 2011, hearing. Thereafter, another hearing date was continued at the request of counsel for the DMV, but Mr. Meadows did not object to that continuance. The next scheduled hearing date was continued because the hearing examiner was ill, which constitutes good cause.

To support his prejudicial delay argument, Mr. Meadows is required to demonstrate that he suffered "actual and substantial prejudice as a result of the delay." Syl. Pt. 5, *Miller v. Moredock*, 229 W.Va. 66, 726 S.E.2d 34 (2011). Prejudice cannot be presumed. *Id.*, 229 W.Va. at 71, 726 S.E.2d at 39. My review of the record and arguments convinces me that he has not met this burden. He argues that if Officer Matheny had not died, he would have cross-examined the officer regarding his driving and the field sobriety tests. However, without Officer Matheny's presence at the hearing, Mr. Meadows was able to present whatever testimony and arguments he wanted to make. He could dispute every single notation in the DUI Information Sheet, and there was no witness to contradict his claims. Mr. Meadows testified at length and even re-enacted one of his field sobriety tests for the hearing examiner. Nonetheless, the hearing examiner did not believe his story, and we accord deference to those credibility determinations. "[F]indings of fact by the administrative officer are accorded deference

---

[1]"OAH" is an abbreviation for the Office of Administrative Hearings.

unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, in part, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Mr. Meadows has provided no basis to convince me that the hearing examiner was clearly wrong in assessing his credibility. Indeed, my review of the record finds support for the hearing examiner's rejection of his claims. For example, Mr. Meadows contradicted himself on the issue of his ability to take field sobriety tests. He argued that a prior brain aneurysm impacted his balance, but when asked what effect the aneurysm had on him, he answered "Minimal. They [did] surgery."

### The License Revocation was Proper

The "principal question" at an administrative driver's license revocation hearing "shall be whether the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs[.]" W.Va. Code § 17C-5A-2(e) (2008).[2] In this case, a preponderance of the evidence showed that Mr. Meadows was DUI. As a matter of statutory law, the DUI Information Sheet (also known as the statement of the arresting officer) was admissible evidence at the hearing. Syl. Pt. 3, *Crouch v. W.Va. Div. of Motor Vehicles*, 210 W.Va. 70, 631 S.E.2d 628 (2006); Syl. Pt. 5, *Dale v. Odum*, 233 W.Va. 601, 760 S.E.2d 415 (2014). Although Mr. Meadows claimed that the information in the DUI Information Sheet was incorrect, the hearing examiner was able to assess his credibility and obviously did not believe him.

Moreover, Mr. Meadows admitted to the arresting officer that he drank beer before driving. He repeated this admission at the hearing. He also failed both the one leg stand and the walk and turn field sobriety tests, and he registered a .071 on the secondary chemical breath test. Although this test result was .009 less than the level deemed to be *prima facie* evidence of DUI, by law it was still "relevant evidence" that he was, in fact, driving under the influence of alcohol. *See* W.Va. Code § 17C-5-8(a)(2) (2004).[3]

---

[2]There is no issue in this case as to whether the traffic stop was lawful. This case is controlled by the 2008 version of West Virginia Code § 17C-5A-2, which did not include language that would hinge the validity of the administrative license revocation upon the legality of the initial stop. *See Miller v. Smith*, 229 W.Va. at 484-85, 729 S.E.2d at 806-07.

[3]West Virginia Code § 17C-5-8(a) (2004) provided the following regarding chemical test evidence of the amount of alcohol in a person's blood:

11

Indeed, where there is evidence that a person drove while under the influence of alcohol and/or drugs, the person's license may be revoked without any secondary chemical test result. Syl. Pts. 1 & 2, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984).

Lastly, Mr. Meadows argues that there is no evidence in the DUI Information Sheet to support that he was under the influence of drugs. He testified that the only drug he had ingested was his blood pressure medication. However, given the evidence of intoxication in this case, there was more than sufficient evidence for the hearing examiner to conclude that Mr. Meadows was DUI even without specific evidence that he had ingested a drug that could have impaired him.

For the reasons set forth herein, I believe that the Commissioner's license revocation order should have been affirmed. Accordingly, I respectfully dissent.

---

(1) Evidence that there was, at that time, five hundredths of one percent or less, by weight, of alcohol in his or her blood, is prima facie evidence that the person was not under the influence of alcohol;

(2) Evidence that there was, at that time, more than five hundredths of one percent and less than eight hundredths of one percent, by weight, of alcohol in the person's blood is relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of alcohol;

(3) Evidence that there was, at that time, eight hundredths of one percent or more, by weight, of alcohol in his or her blood, shall be admitted as prima facie evidence that the person was under the influence of alcohol.