708 S.E.2d 531

Joe E. MILLER, Commissioner, West Virginia Department of Motor Vehicles, Respondent Below, Appellant

v.

Craig A. HARE, Petitioner Below, Appellee.

No. 35560.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2011.

Decided April 1, 2011.

---

Scott E. Johnson, Attorney General's Office, Charleston, WV, for Petitioner.

Lisa Hyre, Hyre Law Office, Kingwood, WV, Carter Zerbe, David Pence, Carter Zerbe & Associates, Charleston, WV, for Respondent.

McHUGH, Justice:

Petitioner Joe E. Miller, the Commissioner of the West Virginia Department of Motor Vehicles ("Commissioner") seeks relief from the October 11, 2009, order of the Circuit Court of Kanawha County prohibiting the holding of a second hearing with regard to the administrative revocation of Respondent Craig A. Hare's operator's license. Because a continuance of the initial administrative proceeding had not been requested by Mr. Hare or the investigating officer, the trial court ruled that the Commissioner had no authority to schedule a second hearing. Upon our examination of the applicable statutes and rules, we conclude that the Commissioner did have the necessary authority to grant a continuance under the facts of this case. Accordingly, we reverse the trial court's order granting a writ of prohibition and the related order of December 22, 2009, granting attorney's fees and costs to Mr. Hare in connection with his procurement of the writ of prohibition.

## I. Factual and Procedural Background

On December 21, 2008, Mr. Hare was arrested for driving under the influence of alcohol in Preston County, West Virginia by Deputy C.A. Martin of the Preston County Sheriff's Department. According to the DUI Information Sheet completed by Deputy Martin, Mr. Hare had slurred speech, glassy bloodshot eyes, and a belligerent attitude at the time of the arrest. Mr. Hare refused to take any of the three standard field sobriety tests. After receiving his *Miranda* warnings, he waived his right to remain silent and admitted to having consumed "6 or 7 drinks" of vodka.[1]

By order entered on January 22, 2009, the DMV revoked Mr. Hare's driving privileges. Mr. Hare timely requested an administrative hearing on the license revocation and specifically requested that the investigating officer

---

1. Mr. Hare's blood alcohol content was .141.

be in attendance at the revocation proceeding. After scheduling the revocation proceeding for April 15, 2009, in Morgantown, West Virginia, the DMV issued and served a subpoena on Deputy Martin to appear at the hearing.

On the date of the revocation hearing, Mr. Hare traveled to Morgantown, West Virginia, with his counsel. After the Hearing Examiner accepted the DUI Information Sheet into evidence, the examiner noted that Deputy Martin had failed to appear for the hearing. Mr. Hare's counsel moved to dismiss the revocation but that motion was not granted. The hearing was adjourned and then later scheduled for July 22, 2009, to permit Deputy Martin to appear as requested by Respondent.[2] Because Mr. Hare's attorney had a conflict with the July hearing date, the hearing was rescheduled for September 24, 2009, and Deputy Martin was again subpoenaed to appear at the hearing.

On September 8, 2009, Mr. Hare filed a petition with the circuit court seeking a writ of prohibition to prevent the DMV from holding another revocation hearing. In support of his motion, Mr. Hare argued that the Commissioner "exceeded its authority when it scheduled a second hearing on Mr. Hare's driver's license revocation as a full hearing and opportunity to be heard was given to all parties on April 15, 2009." As "no person, witness, attorney, or arresting officer requested a continuance from the Commissioner for any reason either before or following the April 15, 2009 hearing," Mr. Hare argued that there was no jurisdiction for the second hearing.

Following a hearing on Mr. Hare's petition on September 23, 2009, the trial court issued a writ of prohibition by order entered on October 11, 2009. Through that order, the trial court granted Mr. Hare's petition on grounds that a second hearing would violate Mr. Hare's due process rights. In addition to prohibiting the Commissioner from holding a second revocation hearing, the trial court invited Mr. Hare to seek attorney's fees. By order of December 22, 2009, the trial court awarded Mr. Hare $3,082.50 for attorney's fees to reimburse him for the costs associated with procuring the writ of prohibition. Through this appeal, the Commissioner seeks relief from the order granting Respondent a writ of prohibition and the order granting Mr. Hare his attorney's fees.

## II. Standard of Review

▪ As we recognized in syllabus point one of *Martin v. West Virginia Division of Labor Contractor Licensing Board*, 199 W.Va. 613, 486 S.E.2d 782 (1997), "the standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo.*" In reviewing an award of attorney's fees made by a trial court, we examine whether the award was an abuse of the trial court's discretion. *See Beto v. Stewart*, 213 W.Va. 355, 359, 582 S.E.2d 802, 806 (2003) ("The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse."). With these standards in mind, we proceed to determine whether the trial court committed error in granting the writ of prohibition and in making an award of attorney's fees.

## III. Discussion

### A. Writ of Prohibition

At the time of Mr. Hare's arrest, the statutory provisions governing the administrative hearing available to a person whose license had been revoked for DUI required that an investigating officer could only attend the revocation hearing upon the specific request of the individual whose license had been revoked or the Commissioner.[3] W.Va.Code § 17C–5A–2(d) (2008). Mr. Hare timely requested that the investigating officer, Deputy Martin, attend his revocation hearing.[4]

---

2. *See* W.Va.Code § 17C–5A–2(d) (2008).

3. The statute provided: "Any investigating officer who submits a statement ... that results in a hearing pursuant to this section [17C–5A–2] shall not attend the hearing ... unless requested to do so by the party whose license is at issue ... or by

the commissioner." W.Va.Code § 17C–5A–2(d) (2008).

4. With statutory changes enacted in 2010, there is no longer a requirement that an investigating officer can only attend the revocation hearing

When Deputy Martin failed to appear at the revocation hearing held on April 15, 2009, despite the issuance of a subpoena, the hearing examiner determined that he was obligated to continue the hearing.[5]

By continuing the hearing, Mr. Hare contends that the Commissioner violated the statutory provision which requires that the policies adopted by the Commissioner with regard to postponements and continuances "shall be enforced and applied to all parties equally." W.Va.Code § 17C–5A–2(c) (2008). In making this argument, Mr. Hare focuses on the disparate result that obtains when a licensee fails to appear at an administrative hearing as compared to when an investigative officer does not comply with a subpoena compelling his or her attendance at such a hearing. See 91 C.S.R. § 1–3.7. By regulation, the failure of the person challenging his or her revocation to appear serves to "automatically reinstate" the revocation where a continuance has not been requested,[6] but the nonappearance of the officer does not relieve the licensee's obligation to appear at the hearing. See id. Seeking to graft the statutory requirement for applying continuance policies equally to "all parties" onto the regulatory provision that governs the "failure to appear," Mr. Hare submits that the effect of an investigating officer's failure to appear at a revocation hearing after being properly subpoenaed should be an automatic reinstatement of the operator's license.[7] Cf. W.Va.Code § 17C–5A–2(c) (2008) to 91

C.S.R. § 1–3.7. Because the Commissioner did not reinstate his license after Deputy Martin failed to appear at the April 15, 2009, hearing, Mr. Hare argues that the Commissioner has violated his right to a fair hearing.[8]

At the center of the matter before us is the issue of whether the Commissioner had the right to continue the April 15, 2009, hearing when Deputy Martin failed to appear after being served with a validly issued subpoena. Because neither he nor Deputy Martin sought a continuance of the revocation proceeding, Mr. Hare submits that the Commissioner lacked the authority to continue the matter. After the five-day period following the hearing date had passed and Deputy Martin failed to avail himself of the opportunity to seek an emergency continuance as provided by regulation,[9] Mr. Hare posits that the Commissioner was acting in excess of his authority by continuing the revocation proceeding. See 91 C.S.R. § 1–3.8. In singularly focusing on the emergency continuance regulation, both Mr. Hare and the trial court overlooked the statutory authority given to the Commissioner to continue matters on his own authority.

As part of the statutory scheme that permits a person arrested for DUI to challenge his license revocation, the Commissioner is granted the authority to "postpone or continue any hearing" on his or her "own motion." W.Va.Code § 17C–5A–2(c) (2008). The statute also provides the Commissioner to grant

upon specific request of the licensee or the Commissioner. See W.Va.Code § 17C–5A–2 (2010).

5. Under the applicable regulations, there was a five-day window following the administrative hearing during which the investigating officer could file a request for an emergency continuance. See 91 C.S.R. § 1–3.8.

6. By statute, a request for an administrative revocation hearing operates to automatically stay the imposition of the period of revocation or suspension. W.Va.Code § 17C–5A–2(a).

7. This logic fails for two reasons. First, rather than contesting the uneven application of continuance policies, Respondent is actually taking issue with the differing effect of the failure to appear of a licensee versus a police office. Second, the reinstatement of a previously revoked license (see supra note 6), which operates as a

matter of law when the licensee fails to show for a hearing he/she requested, is not the equivalent of an outright dismissal of the license revocation for the officer's failure to appear. In the former instance, the non-appearance of the licensee amounts to an effective dismissal or waiver of the revocation challenge and in the latter instance, the officer's non-appearance has no bearing on the Commissioner's intention of pursuing the license revocation.

8. The issue of alleged unfairness that Mr. Hare raises stems from the delay between the initial license revocation and the scheduling of a second administrative hearing to address the revocation issue. See David v. Comm'r of Motor Vehicles, 219 W.Va. 493, 637 S.E.2d 591 (2006) (recognizing that "improper delay" in revocation proceeding may amount to due process violation).

9. See supra note 5.

such continuances "upon application for each person for good cause shown." *Id.* Confirming the Commissioner's *sua sponte* authority to grant continuances, the regulations that address the postponement or continuance of a revocation hearing provide:

> The Commissioner may postpone or continue a hearing on his or her own motion. The motion shall be for good cause including, but not limited to, docket management, availability of hearing examiners *or other essential personnel*, Division error in scheduling or notice, or mechanical failure of essential equipment, i.e. recording equipment, file storage equipment, etc.

91 C.S.R. § 1–3.8.3 (emphasis supplied).

As part of the 2008 changes to the license revocation statutes,[10] the DMV was charged with the exclusive responsibility of securing the attendance of the investigating officer at the administrative hearing.[11] *See* W.Va.Code § 17C–5A–2(d) (2008). According to the Commissioner, the statutory duty imposed on the DMV to secure the officer's attendance translated into an affirmative obligation to compel the officer to be present at the revocation hearing. In light of this statutory amendment, the Commissioner instituted a policy[12] of continuing hearings when an officer who had been subpoenaed pursuant to the licensee's request failed to show up at the revocation hearing.[13]

■ When the investigating officer failed to appear at the administrative revocation hearing in this case, the Commissioner took the position that it had the necessary authority under both the applicable statutes and regulations to grant a continuance of his own accord notwithstanding the fact that a continuance had not been requested by either the licensee or the officer. We agree. Given the statutory duty imposed on the DMV to secure the investigating officer's presence at the hearing once Mr. Hare had requested his attendance,[14] Deputy Martin qualified as an individual essential to the resolution of the revocation proceeding. *See* W.Va.Code § 17C–5A–2(d) (2008); 91 C.S.R. § 1–3.8.3. Barring the licensee's decision to forego his request to have Deputy Martin attend the hearing, the Commissioner was obligated to secure the officer's attendance at the revocation proceeding. Consequently, the necessary good cause for continuing Mr. Hare's revocation proceeding was present.

In ruling that the Commissioner exceeded its jurisdiction by scheduling a second hearing in this matter, the trial court committed error. Pursuant to West Virginia Code § 17C–5A–2(c) (2008), the Commissioner has authority to continue an administrative license revocation hearing on his or her own motion when an investigative officer, despite a validly issued subpoena, fails to appear at the administrative hearing and fails to seek an emergency continuance. Good cause for the continuance exists by virtue of the statutory duty imposed on the Commissioner to secure the officer's attendance at the hearing under West Virginia Code § 17C–5A–2(d) (2008) once the licensee has specifically requested the officer's attendance at the revocation proceeding. Accordingly, the trial court exceeded its jurisdiction in granting a writ of prohibition to prevent the Commis-

---

10. Those changes went into effect on June 6, 2008, and were later removed with statutory amendments that went into effect on June 11, 2010. *Cf.* W.Va.Code § 17C–5A–2 (2008) to § 17C–5A–2 (2010).

11. Previously, it was up to the driver to undertake efforts to secure the officer's attendance by requesting the DMV's issuance of a subpoena.

12. As reflected by a memorandum dated June 30, 2009, from Joe E. Miller, DMV Commissioner, to all hearing examiners and final order clerks, the DMV employed the following approach to securing the officer's attendance at revocation hearings: "Upon the first non-appearance of a subpoenaed officer, the DMV will contact the officer by telephone to secure attendance at the next scheduled hearing. Upon the second nonappearance ... the DMV will enforce the subpoena in circuit court."

13. If the licensee decided to withdraw his or her request for the officer's attendance at the revocation proceeding, the DMV represented to the trial court that it would issue a final order based on the existing record.

14. As noted above, the statute no longer limits the investigating officer's appearance at the administrative hearing to a precedent request from either the licensee or the Commissioner. *See supra* note 4.

sioner from holding a second revocation hearing in this matter.

## B. Attorney's Fees

As support for its decision to award attorney's fees to Mr. Hare, the trial court looked to this Court's decision in *David v. Commissioner of Motor Vehicles*, 219 W.Va. 493, 637 S.E.2d 591 (2006). Following a DUI arrest, the licensee in *David* requested a revocation hearing and caused a subpoena to be issued by the DMV [15] upon the investigating officer. While the licensee along with his expert witness [16] and counsel were present for the October 4, 2004, hearing scheduled to begin at 12:30 p.m., the investigating officer did not appear. Pursuant to the officer's telephonic requests, the hearing was postponed until 3 p.m. on that same date because the officer was in magistrate court thirty minutes away. When the officer failed to show up at 3:00 p.m., the licensee and his counsel departed. 219 W.Va. at 495, 637 S.E.2d at 593. After receiving a written continuance request from the Fayette County Prosecutor, the DMV continued the matter until March 9, 2005, on the ground that "[d]ue to an unexpected delay in Magistrate Court, the Arresting Officer was unable to appear for the scheduled administrative hearing." *Id.* at 496, 637 S.E.2d at 594. When the licensee unsuccessfully sought to bar any further proceedings on the revocation issue, this Court was asked to determine whether the trial court erred in not issuing a writ of prohibition.

Finding that none of the emergency continuance provisions [17] were applicable, we ruled that the license revocation proceeding should not have been continued on the stated basis of an emergency. 219 W.Va. at 497, 637 S.E.2d at 595. In light of the DMV's wrongful reliance on the emergency continu-ance rule, this Court determined that the DMV had improperly delayed the revocation proceeding and as a consequence of that delay, denied Mr. David his due process right to a full and fair hearing based on the undisputed allegation that he could not afford to pay the expert he retained to appear at another hearing. *Id.* at 498, 637 S.E.2d at 596. After recognizing that an outright dismissal of the revocation would be an improper sanction as "the law favors the resolution of cases on their merits," we determined that the appropriate sanction for the improper continuance was to require the DMV to pay the substantial expenses and costs incurred by Mr. David in connection with the DMV's improper delay.[18] *Id.* at 498, 637 S.E.2d at 596.

The trial court wrongly concluded that this case was on all fours with *David.* The only parallel between the two cases is the investigating officer's failure to appear at the administrative hearing after being subpoenaed. Not only was *David* decided under a different statutory scheme that did not impose a duty on the DMV to secure the investigating officer's attendance at the revocation hearing, but the continuance in *David* was based upon an improper reliance on the emergency rule whereas in Mr. Hare's case, the continuance was granted pursuant to the Commissioner's statutory right to continue a hearing on his own motion. *Cf.* W. Va.Code §§ 17C–5A–2 (2004) to 17C–5A–2(d) (2008); *see* W.Va.Code § 17C–5A–2(c). Simply put, none of the grounds we relied upon in *David* to remand the case for a possible award of attorney's fees [19] are present in this case. Accordingly, the trial court committed error in making an award of attorney's fees to Mr. Hare.

---

**15.** *See supra* note 11.

**16.** The licensee had hired an expert from Virginia on the subject of field sobriety tests and breath testing. *David*, 219 W.Va. at 495, 637 S.E.2d at 593.

**17.** *See* 91 C.S.R. § 1–3.8.4.

**18.** In accord with our goal of placing the licensee in the position in which he would have been minus the improper continuance, we observed that the DMV could choose to dismiss the revocation proceedings instead of paying Mr. David's attorney's fees and expenses. 219 W.Va. at 499, n. 6, 637 S.E.2d at 597, n. 6. The Commissioner correctly recognized that our ruling in *David* "never permitted *both* a prohibition [of the revocation proceeding] *and* an award of fees and costs—it only authorized one or the other."

**19.** *See supra* note 18.

Based on the foregoing, the decision of the trial court to award a writ of prohibition preventing the Commissioner from scheduling a second administrative hearing in this matter for the purpose of securing the attendance of the investigative officer is reversed as is the trial court's award of attorney's fees to Mr. Hare.

Reversed.