IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**

**November 4, 2015**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

No. 14-1063


PATRICIA S. REED, Commissioner, West Virginia
Division of Motor Vehicles,
Petitioner/Respondent Below,

v.

ROBERT B. CONNIFF,
Respondent/Petitioner Below.


Appeal from the Circuit Court of Ohio County
The Honorable Martin J. Gaughan, Judge
Case No. 11-MISC-480

REVERSED AND REMANDED WITH INSTRUCTIONS


Submitted: September 22, 2015
Filed: November 4, 2015


Patrick Morrisey, Esq.                     Joseph J. John, Esq.
Attorney General                           John & Werner Law Offices, PLLC
Elaine L. Skorich, Esq.                    Wheeling, West Virginia
Assistant Attorney General                 Attorney for Respondent
Charleston, West Virginia
Attorneys for Petitioner


CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.     "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.     "Pursuant to West Virginia Code § 17C-5A-2(c) (2008), the Commissioner of the DMV has authority to continue an administrative license revocation hearing on his or her own motion when an investigative officer, despite a validly issued subpoena, fails to appear at the hearing and fails to seek an emergency continuance. Good cause for the continuance exists by virtue of the statutory duty imposed on the Commissioner to secure the officer's attendance at the hearing under West Virginia Code § 17C-5A-2(d) (2008) once the licensee has specifically requested the officer's attendance at the revocation proceeding." Syl. Pt. 2, *Miller v. Hare*, 227 W. Va. 337, 708 S.E.2d 531 (2001).

i

4.     Where "Division error" results in an investigating officer's failure to appear at a revocation hearing as requested by the driver, such failure may constitute good cause for a continuance pursuant to West Virginia Code § 17C-5A-2(c) (2008) and West Virginia Code of State Regulations § 91-1-3.8.3 (2005).

5.     "In the context of a license revocation proceeding conducted pursuant to West Virginia Code § 17C–5A–2, ascertaining whether the facts support a good cause basis for granting any continuance requires a careful examination of whether the delay was unreasonable or excessive under the circumstances, and any prejudice to the licensee shall be a factor considered in making the determination of whether the delay was unreasonable or excessive."  Syl. Pt. 4, *Holland v. Miller*, 230 W. Va. 35, 736 S.E.2d 35 (2012).

6.     "Where the West Virginia Department of Motor Vehicles has improperly delayed a driver's license revocation proceeding held pursuant to *W. Va. Code,* 17C-5A-2 [2004] and thereby denied due process of law to a licensee, a party who has incurred substantial expenses as a result of the improper delay and denial may recover the party's expenses so incurred from the Department in order to place the party in the position in which he or she would have been absent the improper delay and denial by the Department."  Syl. Pt. 2, *David v. Comm'r of W. Va. Div. of Motor Vehicles*, 219 W. Va. 493, 637 S.E.2d 591 (2006).

WORKMAN, Chief Justice:

Petitioner Patricia S. Reed,[1] Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "DMV") appeals the order of the Circuit Court of Ohio County, West Virginia, reversing the final order of the DMV and reinstating respondent Robert Conniff's (hereinafter "Conniff") drivers' license. The circuit court found that the DMV had no "right or authority" to continue the initial revocation hearing in view of the fact that the DMV failed to properly serve a subpoena on the investigating officer upon written request of Conniff, thereby violating Conniff's due process rights.

Based upon our review of the briefs, legal authorities, appendix record, and upon consideration of arguments of counsel, this Court finds that the circuit court erred in concluding that the DMV had no authority to grant a continuance for DMV error in securing attendance of the investigating officer and therefore reverses the circuit court and remands for an order reinstating Conniff's license revocation. However, we further find that the cumulative effect of the multiple continuances and overall delay in this matter, while not prejudicial to Conniff's defense, warrants an award of attorney fees and costs and therefore remand to the circuit court for a determination as to the reasonable amount of such fees and costs.

---

[1] This appeal was filed by Steven O. Dale when he was the Acting Commissioner of the Division of Motor Vehicles. Pursuant to Rule 41(c) of the Rules of Appellate Procedure, the current Commissioner, Patricia S. Reed, was automatically substituted as the named petitioner.

## I.    FACTS AND PROCEDURAL HISTORY

On May 30, 2010, Officer William Ward (hereinafter "Officer Ward") received an informant tip that a vehicle had been involved in a hit and run. Upon investigation, Conniff's vehicle was identified as the hit and run vehicle and Conniff admitted to being involved in an accident and having a "couple beers." Conniff failed all of the field sobriety tests and blew a 0.269 on the intoxilyzer. As a result, Officer Ward filed DUI and hit and run charges against Conniff;[2] on June 29, 2010, the DMV notified Conniff that his driver's license was being revoked for DUI. On July 6, 2010, Conniff requested a hearing and on the form provided by the DMV checked the box stating "I request the investigating officer's attendance. By law, DMV will subpoena the officer."

A hearing was noticed for October 28, 2010. As a result of Conniff's request for Officer Ward's attendance, the DMV allegedly issued a subpoena to Officer Ward and attempted service via certified mail. The subpoena was returned to the DMV on August 14, 2010, as "unclaimed."[3] Officer Ward testified unequivocally at the June 4, 2014, hearing on this matter that he was never served with a subpoena for the October 28, 2010, hearing.

---

[2] The hit and run charge was ultimately dismissed and Conniff pled guilty to reckless driving.

[3] A copy of the actual subpoena is not contained in the appendix record. DMV represented that it also served a copy of the notice of hearing on the Wheeling Chief of Police via certified mail, which was accepted on July 30, 2010. Officer Ward testified that he was not provided with any information presumably received by the Chief.

As a result of Officer Ward's failure to appear at the October 28, 2010, hearing, the hearing examiner "recessed" the hearing over Conniff's objection. All parties appeared to be under the impression that Officer Ward had been properly subpoenaed but simply failed to appear. Conniff argued that there was insufficient evidence to uphold the revocation in light of the officer's failure to appear and that the revocation must be dismissed.

A second hearing was thereafter scheduled for February 25, 2011; Conniff objected to the hearing on the basis that Officer Ward's failure to appear at the initial hearing required dismissal of the revocation and demanded $2,500 in attorney fees. As a result of administrative confusion purportedly caused by the newly-created Office of Administrative Hearings (hereinafter "OAH"), the hearing did not occur despite Conniff and his counsel appearing for the hearing.[4]

A third hearing was scheduled for May 18, 2012; this hearing was cancelled due to illness of the hearing examiner. A fourth hearing was then scheduled for January 22, 2013. Conniff again appeared and objected to the hearing on the same grounds. However, at the outset of the hearing, it was determined that the hearing

_____

[4] DMV claimed that, due to the creation of the OAH shortly after Conniff's revocation, the file was mistakenly sent to OAH despite the fact that Conniff's revocation is governed by procedures pre-existing the OAH. *See Miller v. Smith*, 229 W.Va. 478, 729 S.E.2d 800 (2012), *superceded by statute on other grounds as recognized in Dale v. Ciccone*, 233 W.Va. 652, 658-59, 760 S.E.2d 466, 472-73 (recognizing authority of DMV to designate pre-June 11, 2010, DUI incidents as falling under continued jurisdiction of DMV rather than OAH).

examiner's recording software license had expired and he had no means of recording the proceedings. It appears that the hearing examiner had only been provided with a "demo" license, which expired the day of the hearing; the DMV apparently failed to provide him with a full software license, despite the impending expiration of the demo. This hearing was continued due to "mechanical or equipment failure."

A fifth and final hearing was scheduled on June 4, 2014. At the hearing, the DMV adduced evidence regarding Conniff's alleged DUI. Conniff offered no substantive defense, but merely cross-examined Officer Ward on the DMV's failure to serve him with a subpoena for the initial October 28, 2010, hearing. It was at this hearing, upon proffer by the DMV, that it was first disclosed that the file revealed that Officer Ward's subpoena for the first hearing had been returned "unclaimed." Conniff argued that the DMV had no authority to continue the various hearings in light of its failure to properly subpoena Officer Ward to the first hearing.[5] Nevertheless, by final order entered July 22, 2014, the DMV revoked Conniff's driving privileges effective August 2, 2014. The order did not reference or address any of the legal/procedural issues raised by Conniff.

---

[5] The hearing examiner stated on the record that he believed the procedural/legal arguments regarding the continuances were beyond his purview and that he would not rule on them, but allowed the parties to place arguments on the record and enter exhibits regarding those issues.

4

On July 25, 2014, Conniff filed a petition for review with the circuit court and moved for stay of the revocation; a hearing was noticed for August 8, 2014, on Conniff's motion for stay. The circuit court heard testimony from Conniff that his inability to drive affected his ability to get to and from his restaurant business and that he was relying on his wife, who was in poor health, to get him to his business. In view of his wife's poor health, the circuit court found that Conniff had demonstrated irreparable harm and orally granted the stay.

The circuit court then proceeded to address the merits of the petition for review. Notably, despite the hearing being noticed only for the motion for stay, DMV neither objected to the court addressing the merits, nor requested a continuance to allow it to prepare and/or more fully brief the issues. Conniff argued that the revocation proceedings were required to be dismissed at the initial hearing upon the failure of DMV to properly serve the officer with a subpoena as required by law. The DMV argued that, given its statutory duty to produce the officer on request, it had no choice but to continue the hearing since Conniff refused to waive his right to the officer's attendance. The DMV argued further that the continuances were all reasonable and that there was no harm caused by the delay.

In response, the circuit court initially noted that the DMV's order in no way addressed the legal issues which were argued below and formed the basis of the appeal; accordingly, the court stated that it intended to remand to the DMV for further findings

5

on those issues. The DMV then indicated that upon remand, the circuit court's stay would be ineffective given that jurisdiction would return to the DMV.[6] The circuit court then abruptly "reevaluated its ruling" (per the language in the order) and determined that Conniff was entitled to a dismissal of his license revocation.

By order dated September 11, 2014,[7] the court issued findings of fact and conclusions of law finding that the DMV had a statutory duty to subpoena Officer Ward to the initial hearing and that "[t]he Commissioner's violation of his statutory duty certainly cannot constitute 'good cause' for a continuance." The court further found that the continuance for purported "equipment failure" resulting from the DMV's failure to renew the recording software license, likewise failed to constitute good cause. The circuit court concluded that as a result, "[t]he DMV had no right or authority to grant any continuances over Petitioner's objections" and that so doing "violated the Petitioner's due process rights[.]" Thereafter, the DMV filed the instant appeal.

## II. STANDARD OF REVIEW

This Court has held that

---

[6] The DMV asserts that what its counsel was trying to convey was that the automatic stay would once again become effective upon remand to the DMV pending its ruling on the legal issues, making the circuit court's stay order moot, but that the circuit court did not allow its counsel to fully articulate her point and thought the DMV was challenging its continued jurisdiction.

[7] The DMV transmitted the administrative record and a CD of the initial and final hearings on September 4, 2014; these items were filed by the circuit clerk on September 8, 2014.

6

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).  Moreover, "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Id.* With these standards in mind, we proceed to the parties arguments.

## III.    DISCUSSION

### A. *DMV's Failure to Properly Subpoena the Investigating Officer*

This case primarily presents a narrow issue of first impression:  whether the DMV's failure to *properly* subpoena the investigating officer to a revocation hearing constitutes "good cause" for continuance of the hearing.[8]  This Court has previously held

---

[8] While the DMV asserts seven separate assignments of error, we find that only the issue of whether its failure to properly issue a subpoena to the investigating officer constitutes good cause for a continuance to be meritorious; several of the remaining six assignments of error are borderline frivolous.  First, the DMV's assertion that the circuit court erred in granting a stay of the revocation was obviously mooted by virtue of the circuit court's dismissal of the proceedings.  Second, the DMV's assertion that the circuit court erred by reversing the revocation because the DMV's final order did not address legal arguments raised by Conniff is baseless.  While the order briefly references the DMV's failure to address the procedural defenses raised by Conniff, the order is in no way grounded on this passing aside.

(continued . . .)

7

that the officer's failure to appear where a validly issued subpoena exists constitutes good

cause:

> Pursuant to West Virginia Code § 17C-5A-2(c) (2008), the Commissioner of the DMV has authority to continue an administrative license revocation hearing on his or her own motion when an investigative officer, *despite a validly issued subpoena*, fails to appear at the hearing and fails to seek an

---

Third, the DMV's contention that the circuit court erred in issuing an order reversing the revocation where it did not have the administrative record is lacking in both legal and factual basis. The issue presented on appeal to the circuit court was a pure question of law. *See Wood Cnty. Bd. Of Educ. v. Smith*, 202 W. Va. 117, 502 S.E.2d 214 (1998) (finding record unnecessary where issue presented is question of law). Even assuming, *arguendo*, that the record was necessary to determine the purely legal issues on appeal to the circuit court, the DMV provided the record and a CD of the hearings one week before the order was entered--nearly a month after the hearing.

Fourth, the DMV argues that the circuit court erred by ruling on the merits of Conniff's appeal during the course of what was noticed only as a hearing on the motion for stay. However, as noted above, *at no time* during the hearing did the DMV object to the court addressing the merits of the appeal which were set forth in full in Conniff's assignments of error to the circuit court. *See* W. Va. Code § 29A-5-4(e) (1998) (2015 Repl. Vol.) ("Appeals taken on questions of law, fact or both, shall be heard upon assignments of error filed in the cause or set out in the briefs of the appellant."). Subsequent to the hearing and in the intervening *one month between the hearing and the entry of the order*, the DMV neither filed a brief nor asked for rehearing. Notably, the DMV made the exact same arguments before this Court as before the circuit court on the lone meritorious legal/procedural issue presented. As such, any purported error in this regard was harmless.

Finally, the DMV's two remaining assignments of error argue that since Conniff was found to be DUI, his procedural defenses are ostensibly immaterial. The issue of whether DUI was proven was not on appeal before the circuit court, nor here. In fact, it was not even challenged by Conniff at the revocation hearing. The sole legal issue presented below and before this Court is whether the DMV violated Conniff's due process rights with repeated continuances, the first of which Conniff argues was improperly granted due to the DMV's failure to adhere to its statutory obligation to produce the officer.

8

emergency continuance. Good cause for the continuance exists by virtue of the statutory duty imposed on the Commissioner to secure the officer's attendance at the hearing under West Virginia Code § 17C-5A-2(d) (2008) once the licensee has specifically requested the officer's attendance at the revocation proceeding.

Syl. Pt. 2, *Miller v. Hare*, 227 W. Va. 337, 708 S.E.2d 531 (2011) (emphasis added). The Court reached this holding by first observing that the DMV clearly has authority to grant continuances for good cause by virtue of both statute and regulation. *Id.* at 340-41, 708 S.E.2d at 534-35. In particular, West Virginia Code § 17C-5A-2(c) (2008)[9] provides that "[t]he commissioner may postpone or continue any hearing on the commissioner's own motion or upon application for each person for good cause shown." In accordance with that statute's directive that the commissioner promulgate procedural rules to govern such continuances, which "shall be enforced and applied to all parties equally," *id*., the DMV promulgated West Virginia Code of State Regulations § 91-1-3.8.3 (2005)[10] which provides:

> The Commissioner may postpone or continue a hearing on his or her own motion. The motion shall be for good cause including, but not limited to, docket management, availability of hearing examiners or other essential personnel, Division error in scheduling or notice, or mechanical failure of essential equipment, i.e. recording equipment, file storage equipment, etc.

---

[9] Given the date of Conniff's offense, the 2008 version of West Virginia Code § 17C-5A-2(c) is applicable. The current version of this portion of subparagraph (c) is, in substance, the same. *See* W. Va. Code § 17C-5A-2(c)(2) (2015) (2013 Repl. Vol.). Similarly, the current regulations governing OAH continuances are found at West Virginia Code of State Regulations § 105-1-9 (2015).

[10] *See* n.9, *supra*.

The *Hare* Court further noted that the DMV is charged with "the exclusive responsibility" of securing the attendance of the investigating officer at the administrative hearing per West Virginia Code § 17C-5A-2(d). *Id.* at 341, 708 S.E.2d at 535. Accordingly, the Court found that in light of the statutory duty imposed on the DMV to secure the officer's attendance, good cause existed to continue the hearing where the officer failed to appear despite a valid subpoena. *Id.*

Both parties herein argue that *Hare* supports their position. The DMV argues simply that since it has a statutory duty to secure the officer's attendance upon request of the driver, a continuance must be granted per *Hare* regardless of why the officer fails to appear. Conniff argues that *Hare* implies that good cause for a continuance exists *only* where the DMV issues a *valid* subpoena and the officer does not appear. We find that *Hare* stands for neither of these propositions since the issue presented herein was simply not present in that case.

Our holding in *Hare* reflects a recognition that a driver should not be permitted to take advantage of an officer's failure to appear where both the driver and the DMV have acted in good faith to follow the statutory and procedural rules. In *Hare,* the DMV is blameless. In the instant case, however, it is the failure of the DMV to effectuate service of process which occasioned the officer's absence at the hearing. The question then, is whether this failure is of such significance that it should require dismissal of the

revocation outright.  No part of our ruling in *Hare* necessarily dictates the outcome of this question.

Rather, this issue requires the Court to examine the statutory and regulatory authority for the granting of continuances by the DMV.  As noted above, West Virginia Code § 17C-5A-2(c) expressly permits the DMV to grant a continuance for good cause. West Virginia Code of State Regulations § 91-1-3.8.3 puts a finer point on what constitutes "good cause" and provides that good cause includes but is *"not limited to*[] docket management, availability of hearing examiners or other essential personnel, Division error in scheduling or notice, or mechanical failure of essential equipment, i.e. recording equipment, file storage equipment, etc." (emphasis added).  Without question, the wording of § 91-1-3.8.3 places considerable discretion with the DMV as to what constitutes "good cause."   However, this Court has recognized that the power and authority granted by the Legislature to create rules of procedure is nevertheless subject to restriction and review.  *See Reed v. Thompson*, 235 W.Va. 211, ___, 772 S.E.2d 617, 621 (2015) (observing that if agency has authority under administrative rule, "the scope of the agency's authority is strictly limited to what is contained in the rule").

While the DMV would appear to have broad latitude in determining "good cause" for purposes of continuances, we need not wander aimlessly within the bounds of theoretical "good cause" to determine if the DMV's administrative failure to effectuate service of process of the investigating officer's subpoena is the type of "good cause"

11

prescribed under the statute or regulation. Rather, we need look no further than the explicit good cause exception for "Division error in scheduling or notice" contained in the regulation. Inclusion of "Division error" in the list of matters which definitionally constitute "good cause," plainly suggests that mere oversight or other administrative error which prevents a hearing from going forward in full on the merits may constitute good cause. Both "scheduling" and "notice" speak directly to the impediments encountered here—a failure to assemble all critical participants at the same time and place.[11]

Importantly, the DMV did not simply refuse to honor Conniff's request for the investigating officer's attendance in this case. Rather, it issued a subpoena and attempted service via one of the prescribed means. *See* W. Va. C.S.R. § 91-1-3.2.1 (providing for service of administrative subpoena via registered or certified mail). It was only when the subpoena was returned "unclaimed" by the officer that the subpoena ostensibly "fell through the cracks" of the DMV. The DMV's statutory duty to procure the officer's attendance at a hearing is not immune to human error. Nor is the well-recognized purpose of these proceedings—"to protect innocent persons by removing intoxicated drivers from the public roadways as quickly as possible"—furthered by demanding flawless execution of the DMV's subpoena obligations. Syl. Pt. 3, *In re Petition of McKinney*, 218 W.Va. 557, 625 S.E.2d 319 (2005). We therefore hold that

---

[11] *See also Hare,* 227 W. Va. at 341, 708 S.E.2d at 535 (finding investigating officer is "individual essential to the resolution of the revocation proceeding," absence of whom constitutes "good cause").

where "Division error" results in an investigating officer's failure to appear at a revocation hearing as requested by the driver, such failure may constitute good cause for a continuance pursuant to West Virginia Code § 17C-5A-2(c) and West Virginia Code of State Regulations § 91-1-3.8.3. We therefore conclude that the circuit court erred in ruling that the continuance of the original hearing of October 28, 2010, was lacking in good cause and therefore violated Conniff's due process rights.

This holding notwithstanding, this Court is compelled to more expressly disabuse the DMV of its brazen contention that the DMV may hold a driver interminably hostage to its own administrative negligence throughout the revocation process.[12] For example, the DMV argues, with regard to its failure to properly subpoena the investigating officer, that where a driver requests the presence of the investigating officer and then has the temerity to refuse to waive this right when the DMV's error results in the officer's non-appearance, a continuance is actually an accommodation *to the driver* and therefore permissible under any scenario. The DMV's argument in this regard suggests a belief that DMV error may be used to force a driver to choose between forfeiting rights afforded to him or prolonging, for an indeterminate period of time, the

---

[12] The "rule of deference" afforded to an agency's regulatory interpretation of a statute traditionally applies when an agency's interpretation is a "product of delegated authority for rulemaking[.]" *Stinson v. United States,* 508 U.S. 36, 44 (1993). However, as this Court has observed, "courts customarily withhold [such] deference from agencies litigating positions." *W. Va. Health Care Cost Review Auth. v. Boone Mem'l Hosp*., 196 W. Va. 326, 334, 472 S.E.2d 411, 419 (1996) (citing *In re Snuffer,* 193 W.Va. 412, 417, 456 S.E.2d 493, 498 (1995) (Cleckley, J., concurring)).

resolution of the revocation proceeding. More broadly, the DMV seems to take the position that drivers may be held captive by cumulative continuances into perpetuity insofar as such continuances are grounded in ostensible "good cause." This argument is not only unseemly on its face, but ignores our caselaw regarding the prejudicial effect of excessive delays in DMV revocation proceedings and must be addressed, particularly in light of the litany of continuances which occurred subsequent to the October 28, 2010, hearing in this case.

## B. Subsequent Continuances and Overall Delay

We begin by noting that the DMV is statutorily charged with conducting hearings within six months of the request for hearing: "[A]ny hearing shall be held within one hundred eighty days after the date upon which the commissioner received the timely written request for a hearing unless there is a postponement or continuance." W. Va. Code § 17C-5A-2(c). Irrespective of the "postponement or continuance" caveat to this time frame, our caselaw makes clear that the DMV may not perpetually continue revocation proceedings *ad infinitum,* thereby obliterating the statutory time limitations and jeopardizing drivers' due process rights.

Without question, this Court has recognized that "due process concerns are raised when there are excessive and unreasonable delays in license suspension cases." *Holland v. Miller*, 230 W. Va. 35, 39, 736 S.E.2d 35, 39 (2012) (citing *Dolin v. Roberts*, 173 W. Va. 443, 317 S.E.2d 802 (1984)). In that regard, this Court has held that the

14

"good cause" analysis of any given continuance or series of continuances must be viewed in light of the circumstances of the delay and any potential prejudice to the driver:

> In the context of a license revocation proceeding conducted pursuant to West Virginia Code § 17C-5A-2, ascertaining whether the facts support a good cause basis for granting any continuance requires a careful examination of whether the delay was unreasonable or excessive under the circumstances, and any prejudice to the licensee shall be a factor considered in making the determination of whether the delay was unreasonable or excessive.

Syl. Pt. 4, *Holland*, 230 W. Va. 35, 736 S.E.2d 35.

As noted above, it was nearly four years from Conniff's request for a hearing on July 6, 2010, until he received a hearing on the merits on June 4, 2014. During that time four hearings were scheduled and continued:  the first for failure of the officer to appear, the second due to a misplaced file with the OAH, the third for illness of the hearing examiner, and the fourth due to the DMV's failure to renew the hearing examiner's recording software license.  With regard to each individual continuance, Conniff claims each was defective except for the hearing examiner illness and irrefutably blames administrative bungling at the DMV, *i.e.* failure to serve the officer, misplacement of the file with OAH, and failure to renew the hearing examiner's recording software.  Recognizing perhaps that its continual mishandling of this case and extraordinary delay yields it little favor, the DMV counters simply that there has been no real prejudice established by Conniff.  However, Conniff claims that due to the lapse of time, he was unable to locate the tipster who allegedly witnessed the hit and run that gave

15

rise to his arrest[13] and that he incurred attorney fees and costs for each continued hearing, for which the DMV refused to reimburse him.

This Court has observed that "[s]ome delays are presumptively prejudicial, and if found to be presumptively prejudicial, then the government has the burden to rebut the presumption." *Petry v. Stump*, 219 W.Va. 197, 200, 632 S.E.2d 353, 356 (2006). We have little difficulty in concluding that the overall four-year delay in this matter and circumstances surrounding the various continuances are of such a nature as to render the delay presumptively prejudicial. *See Petry,* 219 W.Va. 197, 632 S.E.2d 353 (finding six-year delay presumptively prejudicial); *In re Petition of Donley*, 217 W. Va. 449, 618 S.E.2d 458 (2005) (finding three-year delay unreasonable); *Meadows v. Reed*, No. 14-0138, 2015 WL 1588462 (W. Va. March 16, 2015) (finding four-year delay resulted in prejudice to driver). The DMV's inexcusable administrative mishandling of the file, which resulted in its complete failure to appear for the February 25, 2011, hearing, gave rise to a subsequent one year and three month delay until the next scheduled hearing on May 18, 2012, which was then cancelled due to the hearing examiner's illness. This mounting delay was then compounded by an additional seven month delay until the January 22, 2013, hearing which was continued because the DMV inexplicably failed to provide its hearing examiner with appropriate recording software; this continuance itself

---

[13] Officer Ward confirmed that he had likewise been unable to locate her.

16

resulted in another one year and almost five month delay until the final hearing on the merits.

However, unlike the cases cited above wherein the Court found such delays of similar length prejudicial and dismissed the proceedings, we find that in this case there is no appreciable prejudice to Conniff that cannot be remedied with lesser measures than outright dismissal. For example, in *Petry*, a revocation hearing was conducted, during which the driver introduced photographs and expert testimony; the DMV thereafter attempted to have another hearing prior to which it was revealed that all of the evidence adduced during the original hearing was lost. 219 W. Va. at 200, 632 S.E.2d at 356. Moreover, in *Meadows*, the four-year delay encompassed the death of the investigating officer, whose conclusions in the DUI information sheet were hotly contested by the driver. 2015 WL 1588462 at *6.

In this case, Conniff presented no evidence at the June 4, 2014, hearing in defense of the DMV's assertion that he was driving under the influence. Moreover, his cross-examination of the investigating officer was largely limited to the issue of whether the officer had been properly subpoenaed to the original hearing. Conniff's inability to locate the tipster witness who called in Conniff's hit-and-run was rendered immaterial by Conniff's concession to the investigating officer that he had, in fact, struck another vehicle. Finally, Conniff has failed to demonstrate how the DMV's refusal to reimburse him attorney fees and costs for the continued hearings impeded his defense, to whatever

17

extent he intended to present one. Accordingly, while we find the DMV's delay in this matter egregious and presumptively prejudicial, the DMV has rebutted this presumption by demonstrating that no actual prejudice to Conniff's defense resulted. *See Donley* (refusing to dismiss license suspension after unreasonable delay because claimant suffered no prejudice); *State ex rel. Cline v. Maxwell*, 189 W. Va. 362, 432 S.E.2d 32 (1993) (holding dismissal too strong a remedy absent prejudice resulting from delay); *David v. Comm'r of W. Va. Div. of Motor Vehicles*, 219 W. Va. 493, 637 S.E.2d 591 (2006) (declining to dismiss license revocation proceeding after improper continuance and awarding fees instead).

Nevertheless, we do find that the delay and seemingly perpetual DMV mismanagement of this matter certainly warrant some measure of relief to Conniff. In Syllabus Point 2, in part, of *David*, this Court held that

> [w]here the [DMV] has improperly delayed a driver's license revocation proceeding . . . and thereby denied due process of law to a licensee, a party who has incurred substantial expenses as a result of the improper delay and denial may recover the party's expenses so incurred from the [DMV] . . .
> .

219 W. Va. 493, 637 S.E.2d 591. In *David*, we likewise found that excessive delay occurred, but recognized that dismissal of the proceedings would run counter to the principle that license revocation proceedings should be, where possible and equitable, resolved on their merits and conducted in a manner "devoid of those sporting characteristics . . . of a game of forfeits[.]" 219 W. Va. at 498, 637 S.E.2d 596 (quoting

18

*Rosier v. Garron, Inc*., 156 W. Va. 861, 875, 199 S.E.2d 50, 58 (1973)).  We find that three of the four continuances (excluding the hearing examiner's illness) were occasioned exclusively by the DMV's negligence in matters which in fairness ought to be routine for that agency.  As a result of the *cumulative* effect of those continuances, Conniff is entitled to an award of reasonable attorney fees and costs pursuant to Syllabus Point 2 of *David*.

## IV.  CONCLUSION

Accordingly, we reverse the order of the Circuit Court of Ohio County, and, in light of the DMV's uncontested conclusion that Conniff was DUI, remand for an order reinstating Conniff's license revocation, as well as an award of reasonable attorney fees and costs incurred by Conniff as a result of the October 28, 2010, February 25, 2011, and January 22, 2013, continuances.

Reversed and remanded with instructions.

19