No. 20-0192, *Everett Frazier, Commissioner, West Virginia Division of Motor Vehicles v. Joshua Derechin*

**FILED**
**November 18, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Armstead, Justice, concurring in part and dissenting in part:**

The majority opinion decides two things: *first*, that the circuit court had sufficient evidence to conclude that Mr. Derechin was actually and substantially prejudiced when the Office of Administrative Hearings ("OAH") took nearly four years to render a decision on his license revocation and, *second*, that the circuit court erred when it ordered the Division of Motor Vehicles ("DMV") to pay Mr. Derechin's attorney fees and costs pursuant to our decision in *Reed v. Conniff*, 236 W. Va. 300, 779 S.E.2d 568 (2015). For the reasons stated in the majority opinion, I agree that the circuit court's award of attorney fees and costs should be reversed. However, because I believe that the circuit court lacked sufficient evidence to conclude that OAH's post-hearing delay actually and substantially prejudiced Mr. Derechin, I respectfully dissent.

As an initial matter, I agree that OAH had a responsibility to decide Mr. Derechin's case promptly and that taking nearly *four years* to issue a decision is too long. Syl. Pt. 4, *Miller v. Moredock*, 229 W. Va. 66, 726 S.E.2d 34 (2011). However, as the majority observes, "delay in and of itself—even a substantial one—is insufficient to establish a due process violation[.]" As we noted in *Straub v. Reed*, 239 W. Va. 844, 850, 806 S.E.2d 768, 774 (2017), patently unreasonable delay does not furnish a basis for relief unless "prejudice flowed from" it. *Ibid.* (quoting *In re Petition of Donley*, 217 W.Va. 449, 452, 618 S.E.2d 458, 461 (2005). Because of this, the majority holds, and I agree, that a

driver who "asserts that his or her constitutional right to due process has been violated by a delay in the issuance of the order by the Office of Administrative Hearings . . . must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay." Syl. Pt. 2, in part, *Reed v. Staffileno*, 239 W. Va. 538, 803 S.E.2d 508 (2017). However, I respectfully disagree with the majority because I do not believe that Mr. Derechin made this essential showing of actual and substantial prejudice as a result of the delay.

It is worth noting that the standard is "actual *and* substantial prejudice" and prejudice that is "a result of the delay." *Ibid.* (emphasis added). In other words, it is not enough for the driver to suffer some real prejudice; the prejudice must also be *substantial*. Furthermore, the prejudice must be *caused by* the delay. Prejudice that flows from the revocation itself does not constitute prejudice "as a result of the delay[,]" even if it is substantial.

According to the circuit court, Mr. Derechin needs a license for his job. Public transportation is not a "realistic" option for Mr. Derechin to arrive at work, and he is "regularly sent considerable distances on assignments by his company both in-state and out-of-state." Obviously, under these circumstances, the loss of Mr. Derechin's driver's license could pose a problem for him. However, he would have faced this problem even if OAH had issued a decision the day after the hearing. As the Supreme Court of Pennsylvania has observed, this kind of hardship, "while perhaps prejudicial in itself, is an ordinary part of the governing statutory framework." *Dep't of Transp., Bureau of Driver*

2

*Licensing v. Middaugh*, 244 A.3d 426, 438 (Pa. 2021). Again, prejudice that flows from the revocation itself does not violate due process, even if the prejudice is substantial, because it does not occur "as a result of the delay." *Staffileno*, 239 W. Va. at 540, 803 S.E.2d at 510, syl. pt. 2, in part.

Thus, the question becomes what changed for Mr. Derechin between the OAH hearing and the issuance of the OAH final order. According to *Staffileno*, proving a due process violation "ordinarily" requires a driver to show a change in circumstances. 239 W. Va. at 543, 803 S.E.2d at 513 ("As a general matter, under *Miller* the standard for post-hearing prejudice will ordinarily involve some type of change in a party's circumstances that may have been substantially prejudiced because of the delay in issuing a final order by OAH."). However, subsequent cases suggest that showing some type of detrimental change is essential. In *Reed v. Boley*, 240 W. Va. 512, 517, 813 S.E.2d 754, 759 (2018), we reversed a circuit court's finding of prejudice because the driver failed to "specifically identif[y] some type of detrimental change in his circumstances that was related to the delay in OAH issuing its final order[.]"

Like the circuit court, the majority finds sufficient evidence of a detrimental change in Mr. Derechin's divorce, reasoning that because OAH conducted the hearing in August 2015 and Mr. Derechin divorced his wife sometime in 2016, a decision from OAH "even a year after the hearing" would have allowed Mr. Derechin's ex-wife to meet his transportation needs while the revocation was in effect.

Divorce is certainly a change in circumstances, but this change is unlike the change we found sufficient in *Staffileno*. In *Staffileno*, we observed that, "[i]n essence, the circuit court determined that Mr. Staffileno *would not have retired when he did* . . . if OAH had issued a timely decision." *Staffileno*, 239 W. Va. at 543, 803 S.E.2d at 513 (emphasis added). In light of that determination, *Staffileno* found it "obvious . . . that as a result of Mr. Staffileno's change in employment, he [would] suffer substantial and *actual* prejudice by the imposition of the untimely decision by OAH." *Id.* at 543–44, 803 S.E.2d at 513–14. In this case, however, there is no evidence that Mr. Derechin ended his marriage as a result of or *in reliance on* OAH's post-hearing delay.

In addition, though Mr. Derechin may have lost in the divorce a back-up driver in the person of his ex-wife, he seems to have gained a back-up driver in the person of his girlfriend. The circuit court found that Mr. Derechin's

> girlfriend, who does not live with him, had recently been staying with him temporarily to drive him locally if needed, which would not be a long-term solution. She is employed and travels in her work for the West Virginia Primary Care Association far outside the Charleston area.

Elsewhere, the circuit court explained that the girlfriend "temporarily stayed with him while he was fearful that the revocation would become effective prior to a stay."

According to these findings, Mr. Derechin and his girlfriend had a plan to cope with his revocation. She would move in temporarily and "drive him locally if needed[.]" The problem, according to the circuit court, was that this arrangement was not

4

a "long-term solution." What the circuit court failed to recognize, however, was that Mr. Derechin did not necessarily require a long-term solution because, according to the February 22, 2013 notice of revocation, Mr. Derechin was facing only a fifteen-day revocation if he participated in the West Virginia Alcohol Test and Lock Program and applied for an ignition interlock device. *See* W. Va. Code § 17C-5A-2(j) (eff. 2012) ("If the Office of Administrative Hearings finds by a preponderance of the evidence that the person did drive a motor vehicle while under the influence of alcohol . . . the commissioner shall revoke the person's license for a period of six months *or a period of fifteen days with an additional one hundred and twenty days of participation in the Motor Vehicle Alcohol Test and Lock Program* in accordance with the provisions of section three-a of this article[.]").

Having to make alternate travel arrangements for fifteen days is not a long-term problem that requires a "long-term solution[,]" nor is it the sort of "*substantial* prejudice *as a result of the delay*" that entitles him to relief. *Staffileno*, 239 W. Va. at 540, 803 S.E.2d at 510, syl. pt. 2, in part (emphasis added). If Mr. Derechin's work requires him to drive to other portions of the state and, indeed, to other states, this travel would have been an inconvenience to any alternate driver, including his former wife, regardless of when it occurred and regardless of her work status. That inconvenience is primarily and most importantly a function of the revocation commanded by law, not a function of who

was available to drive for Mr. Derechin during the fifteen-day window when he could not drive himself.[1]

For these reasons, I believe that Mr. Derechin failed to show that he was actually and substantially prejudiced as a result of the post-hearing delay, and I believe that the circuit court abused its discretion when it found otherwise and reversed OAH's decision. Accordingly, while I concur in the majority's opinion that Mr. Derechin should not be awarded his attorney fees and costs, I respectfully dissent from the majority's opinion to the extent that such opinion holds that Mr. Derechin was entitled to have his license revocation reversed and rescinded. I concur with the majority opinion to the extent that it reverses the circuit court's award of attorney fees and costs to Mr. Derechin.

---

[1] Unlike the circuit court, I am not persuaded by Mr. Derechin's claimed risk to "foregone career advancement in his present company and a management position in another [s]tate." We considered similar assertions in *Straub* and found them unavailing. *See* 239 W. Va. at 847, 806 S.E.2d at 771 ("Mr. Straub testified that he was employed as a pharmaceutical sales representative, and his employer issued notices of potential layoffs regularly. He further testified that during the time frame between his arrest for DUI and the administrative hearing, he attempted to secure other employment. Mr. Straub claimed that he was interviewed by recruiters, but once they learned that his driver's license could possibly be revoked, the recruiters would no longer continue his job search. Fortunately, Mr. Straub's employer did not lay him off and he continued working while the matter was pending.").